IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND<br>OFFICE OF THE ATTORNEY GENERAL<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNIVERSAL ELECTIONS, INC., ET AL.<br><br>　　　　Defendants. | *<br><br>*<br><br>*　　Case No. WDQ 10CV3183<br><br>*<br><br>*<br><br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **MEMORANDUM IN SUPPORT OF**
## **MOTION TO DISMISS COMPLAINT**

Defendants, Universal Elections, Inc., Julius Henson and Rhonda Russell, through their counsel, Edward Smith, Jr., hereby move to dismiss the Complaint on the grounds that: 1) the court lacks subject matter jurisdiction over the Defendants, 2) failure to state a claim upon which relief can be granted, and 3) failure to join a party under Rule 19 Fed. Civ. Proc. Rule 12(b).

## **BACKGROUND**

Plaintiff filed the present Complaint alleging that he as the Attorney General of the sovereign State of Maryland has reason to believe that each of the Defendants have engaged or are engaging in a pattern or practice of telephone calls to Maryland residents in violation of the Telephone Consumer Protection Act (hereinafter "TCPA") and the regulations set forth in 47 C.F.R. § 64.1200. The Attorney General is a democrat with his party affiliation widely known throughout the State of Maryland. He has according to the Complaint brought this action on behalf of the citizens of Maryland to enjoin calls made on one day, November 2, 2010, which was the Maryland Election Day.

The Plaintiff claims that over 112,000 calls were made by an automatic dialing phone system widely known as a "robocall".[1] The term is used for an automated phone call that uses both a computerized autodialer and a computer delivered pre-recorded message.

Congress enacted the TCPA in 1991, Pub. L. No 102-243, 105 Stat. 2394 Codified as amended at 47 U.S.C. § 227. It gave power to the FCC to past rules to achieve the legal and constitutional purposes of the TCPA. To that end the FCC promulgated 47 C.F.R. § 64.1200 (b).

On election day, November 2, 2010, both the Democrats and Republicans fielded candidates to run for Governor of the State of Maryland. The incumbent Governor Martin O'Malley was/is a member of the party, in which Douglas F. Gansler has been elected to his office as Attorney General by the people of Maryland. Robert L. Ehrlich, Jr., was/is a Republican. He hired Defendant Universal Elections, LLC (hereinafter "Universal") as a political operative for his gubernatorial election. Both Defendants Julius Henson and Rhonda Russell were employees of Universal at all relevant times. Universal is a Maryland Limited Liability Corporation established under Title 4A Corporations and Associations Article Annotated Code of Maryland (2010).

Robodial.org, LLC (hereinafter "Robodial"), is a Pennsylvania telecommunication corporation. It was contacted by Universal, for robocalls, on behalf of The Ehrlich Campaign. Universal paid the fee quoted by Robodial under Order #4578218076880001. This happened on November 2, 2010 at 5:53 p.m. Thereafter Universal uploaded a list of Maryland residents to Robodial to deliver a pre-recorded political message as stated in the Complaint. Robodial, then

---

[1] Robocall(s) are made by all political parties in the United States, including both the Republican and Democratic parties. Political robocalls are exempt from the U.S. National Do Not Call Registry and from the Federal Trade Commission (hereinafter "FTC") definition of telemarketer. Such calls are permitted on behalf of political organizations at the federal level and not specifically barred by Maryland legislation.

sent the messages to more than 112,000 Maryland residents without stating the identity of its agency, or client, Universal, or who initiated the call. Robodial had both the identifying responsible party information and a telephone number that the recipients of the prerecorded message could call when it took Universal's money from services. Robodial did not include the information required under 47 C.F.P. § 64.1200(b) of the FCC rules assuming that said regulations are both Constitutional and apply herein.

After the election, Douglas Gansler, Esquire, went to the media and caused a maelstrom of political and public controversy in announcing that the Defendants had violated both State and Federal Law. The Maryland Rules of Professional Conduct prohibit such activity Rule 16-812 MR.P.C. 3.6(a), directed to the media.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the court must assume all well-pled allegations to be true and view same in the light most favorable to the Plaintiff. In its recent decision this court summarized the standard:

> …The court must consider all well-pled allegations in a complaint as true. **Albright v. Oliver**, 510 U.S. 266, 268, (1994), and must construe all factual allegations in the light most favorable to the Plaintiff. See **Harrison v. Westinghouse Savannah River Co.**, 176 F.3d 776, 783 (4th Cir. 1993)…The Court need not, however, accept unsupported legal allegations. **Revene v. Charles County Comm'rs.**, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations devoid of any reference to actual events, **United Black Firefighters v. Hirst,** 604 F. 2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." [**Bell Atlantic Corp. v. Twombly**, 127 S.Ct. 1955 (2007).[ **Alexander v. District Court of MD, et al.**, 8:07-cv-01647-DKC (March 20, 2008).

## FACTS

According to the Complaint, Attorney General Douglas F. Gansler is bringing this action on behalf of Maryland citizens to enforce the provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et. seq. paragraphs1, 3, 6, Complaint.

On Election Day, November 2, 2010, the Defendants are alleged to initiate in excess of 112,000 prerecorded telephone messages to Maryland residents, the majority of whom where registered Democrats residing in Baltimore City and Prince George's County suggesting that Governor O'Malley and President Obama had been successful and the polls were correct and we took it back.  Specifically the message stated:

> "Hello.  I'm calling to let everyone know that Governor O'Malley and President Obama have been successful.  Our goals have been met.  The polls were correct and we took it back.  We're okay.  Relax.  Everything is fine.  The only thing left is to watch it on TV tonight.  Congratulations and thank you."

¶13, ¶14, ¶15
Plaintiff alleges that the defendants omitted the identifying information required by the TCPA in order to disguise the purpose of their calls.  ¶16.  In the same paragraph the Plaintiff sets forth the unsupported allegation that "had Defendants advised voters that the calls" were being made on behalf of the campaign of Robert L. Ehrlich, Jr., it would have changed the message conveyed by the calls – that Governor O'Malley had been successful and did not need the recipient's votes, paragraph16.  No where in the Complaint does the Plaintiff indicate that any of the 112,000 Maryland residents actually heard, or received the robocalls from Robodial. Complaint paragraphs 1-20.  Not one citizen is named as the recipient of a telephone call from the Defendants.

Robodial received information on its website of over 112,000 telephone numbers belonging to Maryland residents who were registered as Democrats and Republicans paragraphs 2, 13, Complaint.  Robodial failed to state either the identity of the individual, business or other

4

entity, responsible for initiating the call or the telephone number of the individual, business or other entity responsible for initiating the calls over its equipment paragraphs 13, 14,15 Complaint.

Julius Henson and Rhonda Russell are employees of Universal, a Maryland Corporation in good standing at all times relevant. Complaint paragraphs 8, 9. Universal is a LLC under the laws statutes and common law of Maryland. Robodial is a Pennsylvania LLC trading as a Robodial.org, LLC. Complaint paragraph11. Douglas Gansler is the Maryland Attorney General, a democrat and lawyer in good standing before the Court of Appeals of Maryland paragraph 6.

Plaintiff alleges that Defendants violated the TCPA and 47 C.F.R. § 64.1200(b) of the FCC rules in failing to identify the parties who initiated the telephone calls at issue and by failing to provide a telephone number that the recipients of the prerecorded messages could call. Complaint paragraphs17, 18.

They ask for injunctive relief and money damages in the amount of Five Hundred Dollars ($500.00) for each violation of 47 U.S.C. § 227(d) as authorized by 47 U.S.C. 227(f)(1) of the TCPA. Complaint Prayer For Relief ¶(a)(b).

## **ARGUMENT**

I.      THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE THAT ANY CALLS WERE RECEIVED BY RECIPIENT, MARYLAND CITIZENS.

A.      The Complaint Fails To Establish That Any Maryland Resident Received Any Calls Initiated By The Defendants. There is no subject matter jurisdiction.

The purpose of the TCPA and 47 C.F.R. § 64.1200(b) is to allow the recipient of a message to identify the business, individual, or other entity that initiated the call.  It is written by the FCC thusly:

(b) All artificial or prerecorded telephone messages shall:

    (1) At the beginning of the message, state clearly the identity of the business, individual, or other entity of the business, individual, or other entity that is responsible for initiating the call.  If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated, and

    (2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual.  The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.  For telemarketing message to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign.

The TCPA is yet another consequence of the Commerce Clause cases.  **Weiss v. U.S.**, 308 U.S. 321, 327 (1939).  Congress has the power when necessary for the protection of interstate commerce to regulate intrastate transactions, nor is there a constitutional requirement

that the scope of the statute be limited to exclude intrastate communications. **United States v. Lopez**, 514 U.S. 549, 568 (1998) **Cheffer v. Reno**, 55 F.3d 1517 (11th Cir. 1995) holding that the Freedom of Access of 1994 was within the power of Congress under the Commerce Clause, **U.S. v. Genao**, 79 F.3d 1333, 1337 (2d. Cir. 1996) Upholding Comprehensive Drug Abuse Preventions and Control Act of 1970.  Moreover, the telephone is an instrumentality of interstate commerce which the courts have held is alone sufficient for jurisdiction based upon both interstate and intrastate commerce. **U.S. v. Clayton**, 108 F.3d 1114, 1117 (9th Cir.) **Pavlak v. Church**, 727 F.2d 1425, 1427 (9th Cir. 1984), and **Peavy v. Harman**, 37 F.Supp 2d. 495, 519 (N.D. Tex. 1999). "The Telephone is indisputably an instrumentality of interstate commerce.  As such, it is subject to federal regulation even when used purely for intrastate purposes. **Allen v. Miramon**, 614 F.2d 1372, 1379 (5th Cir. 1980).  Finally, whether or not there was/is an effect on interstate commerce is irrelevant.  Since the telephone is an instrumentality of interstate commerce, Congress has plenary power under the Constitution to regulate its use and abuse. **Heart of Atlanta Motel, Inc.**, 379 U.S. at 256, **Hoke and Economides v. U.S.**, 227 U.S. 308, 320 (1913).

This said – Rule 12(b) requires that the Plaintiff states a cause of action upon which relief may be granted.  No where in the Complaint does the Plaintiff state that anyone of the over 112,000 citizens of Maryland heard or received the robocalls that were alleged to have been initiated by anyone of the defendants.

It appears that Plaintiff wants the Court to accept his Complaint on the fallacy that the defendants made the calls and citizens listened to the messages without naming one person who did so.  The purpose of the TCPA and FCC 47 C.F.R § 64.1200(b) requires presumptively notice, and the defendants do not concede that political robocalls require the information

required in the regulation as promoted by plaintiff.  Twenty-three (23) states prohibit such calls by specific legislation, i.e., Indiana, Oklahoma, California.  However, Congress has failed to pass the Robocall Privacy Act of 2006, 2007 and 2008 HR. 5747 limiting such calls in any manner whatsoever.  The 110th Congress never received a committee vote on the legislation proposed by Rep. Zoe Lofgren (D-CA 16).  The same fate attached to the bill in the 109th and 108th Congress.  This political football was to have amended the Federal Election Campaign Act of 1971, but Congress did not have the will to specifically regulate political speech.  It would not "gore its own ox".

Nevertheless, the Complaint falls far short of meeting the standard that any action under the statute must be predicated on acts, which cause a resulting contact with a citizen.  Were it otherwise, then  there would be no reason for the TCPA.  In short, the Complaint fails to state the necessary element and objective of the TCPA.  Someone was reached by phone.  In Re: **Katrina Canal Breaches Litigation** No 07-30119 (5th Cir. 2007)  **Western Radio Service Co. v. Qwest Corp.** 530 F.3d 1186 (9th Cir. 2008).

II.  NEITHER DEFENDANTS JULIUS HENSON NOR RHONDA RUSSELL MAY BE SUED AS INDIVIDUALS UNDER THE TCPA.

Universal is a Maryland LLC under Md. Code Corp and Assn 4A 203.  The Corporation has the following enumerated powers:

Section 4-A-203 Powers

Unless otherwise provided by law, or its articles of organization, a limited liability company has the general powers, whether or not set forth in its articles of organization, to:

> (1) Have perpetual existence, although existence may be limited to a specified period of time if the limitation is set forth in its articles of organization;

(2) Sue, be sued, complain and defendant in all courts;

(3) Transact its business, carry on its operations, and have and exercise the powers granted by this article in any state and in any foreign country;

(4) Male contracts and guarantees, incur liabilities, and borrow money;

(5) Sell, lease, exchange, transfer, convey, mortgage, pledge, and otherwise dispose of any of its assets;

(6) Acquire by purchase or in any other manner, take, receive, own, hold improve, and otherwise deal with any interest in real or personal property, wherever located;

(7) Issue notes, bonds, and other obligations and secure any of them by mortgage or deed of trust or security interest of any or all of its assets;

(8) Purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employee, sell, mortgage, loan, pledge, or otherwise dispose of and otherwise use and deal in and with stock or other interests in and obligations of other corporations, associations, general or limited partnerships, limited liability companies, foreign limited liability companies, business trusts, and individuals.

(9) Invest its surplus funds, lend money in any manner which may be appropriate to enable it to carry on the operations or fulfill the purposes set forth in its articles of organizations, and take and hold real property and personal property as security for the payment of funds so loaned or invested.

(10) Render professional services within or without this State;

(11) Elect or appoint agents and define their duties and fix their compensation;

(12)   Sell, convey, mortgage, pledge, lease, exchange, transfer, and otherwise dispose of all or any part of its property and assets;

(13)   Be a promoter, stockholder, partner, member, associate, or agent of any corporation, partnership, limited liability company, foreign limited liability company, joint venture, trust, or other enterprise;

(14)   Indemnify and hold harmless any member, agent, or employee from any against any and all claims and demands, except in the case of action or failure to act by the member, agent, or employee which constitutes willful misconduct or recklessness, and subject to the standards and restrictions, if any, set forth in the articles of organization or operating agreement;

(15)   Make and alter operating agreements, not inconsistent with its articles of organization or with the laws of the state, for the administration and regulations of the affairs of the limited liability company;

(16)   Cease its activities and dissolve.

There is nothing in the Complaint set forth by the Plaintiff to indicate that either Henson or Russell acted outside of the scope of their employment.  Nor has the Plaintiff claimed that the legal doctrine of Respondeat Superior enables him to recover damages from the employee, or employer as the principle tortfeasor.  There is no claim that under Maryland Law that either Russell or Henson acted within the scope of employment.  **Dhanraj v. Potomac Elec. Power Co.**, 62 Md. App. 94, 488 A.2d 512 (1985).  There is nothing in the Complaint to suggest that Russell or Henson's conduct was done within the scope of their employment, or without, as intentional or malicious.  **Cox v. P. G. County**, 296 Md. 162, 460 A.2d 1038 (1983).

Moreover, the protection afforded to employees for corporate activity at common law applies with equal vigor to both Russell and Henson. The mischief occasioned by the Plaintiff's political motives must bring pause to the court that he truly acts for the citizens of this State. This is precisely why the freedom of political speech is fundamental to the Republic – to prevent such abuses. A corporation's liability cannot under Maryland law translate to personal liability for its employees. **Smith v. Navistar Interm. Transp. Corp.**, 687 F. Supp. 201. **Ferguson Treching Co., Inc,. v. Kiehne**, 618 A.2d 735 329 Md. 169 (Md. 1992)). **Colandrea v. Colandrea**, 401 A.2d 480, 42 Md. App. 421 (Md. App. 1979). (There is no basis to pierce the corporate veil unless fraud is shown and pled). **Selby v. Williams Construction**, 948 A.2d 132, 180 Md. App. 53 (Md. App. 2008). Officers and directors are insulated from personal liability from debts and corporate acts. Moreover, there is nothing in the Complaint which states that Henson or Russell inspired or performed any act which would open them to personal liability. **A. B. Corp. v. Futrovsky**, 259 Md. 65, 79, 267 A.2d 130 (1970).

   III.   ONE CALL ALLEGELY MADE BY THE DEFENDANTS IS NOT A VIOLATION OF THE TCPA.

The Complaint alleges that one call was made on November 2, 2010, Election Night to 112,000 people. It is obvious that the purpose of the TCPA is to provide the consumer, or telephone owner the ability to opt out of future calls, by: 1) requiring the called to identify itself, and 2) providing a number in order to opt out of future calls.

While it is somewhat simplistic, the real object of the TCPA and the FCC regulations is to prevent annoying, repeated and unwelcomed calls on the telephones of American Citizens by telemarketers. The TCPA present an unusual constellation of statutory features designed as a

11

federal right to be free from certain types of telephone solicitations. Moreover, it does not permit an award of attorney fees to the prevailing party as the Plaintiff seeks in the case sub judice. Undeniably, however, there must be a victim who may save him/herself by actively saying no, or having the opportunity to do so.

One cannot violate the TCPA, nor 47 C.F.R § 64.1200 with but one call. Without the possibility of another call the Plaintiff's Complaint sets this forth no violation of the law. None of the defendants ever went to the well again. Therefore, the requirements of 47 C.F.R. § 64.1200 have not been breached. This is clearly an exception with a difference.

## IV. THE DEFENDANTS NEVER INITIATED ANY CALLS WHATSOEVER TO MARYLAND RESIDENTS

The Complaint makes no salient allegations that the defendants initiated the robocalls to Maryland residents. In fact, the Plaintiff states that Robodial sent the calls into the State of Maryland from Pennsylvania. Only Congress may regulate interstate calls. **Platt v. Union Pacific R. R. Co.**, 99 U.S. 48, 58 (1978). Telecommunications and the finance committee of the House Comm. of Energy and Commerce, 102 Congress 28, 29, 83 (1991). Additionally, the Complaint fails under Rule 12(b) to state that the defendants made one call, or deceived Robodial to do so, without the proper warnings to consumers. It is apparent from the pleadings that Robodial was in the communication business and therefore subject to the TCPA, if political messages are covered at all.

That the defendants supplied Robodial list does not mean that it initiated the automated calls. The complaint says so.

## VI. THE FAILUE TO JOIN ROBODIAL UNDER RULE 19 FED CIV. PROC. RULE REQUIRES DISMISSAL

Rule 9 in part provides as follows:

(a)     Persons Required To Be Joined, If Feasible

    (a)     Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:

        A.     In that person's absence the Court cannot accord complete relief among existing parties; or

        B.     That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

            1.     as a practical matter impair or impede the person's ability to protect the interest, or

            2.     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The 4th Circuit has long recognized that a suit may be properly dismissed for failure to join a proper party.  The necessity of joinder are grouped in this circuit into three classes: (1) those who are proper parties, (2) those who are necessary and (3) those who are indispensable. **Halpin v. Savannah River Electric Co.**, 41 F.2d 329 (4th Cir. 1930).  The court must determine that by failing to join a party would or may leave the controversy in such condition that its final termination may be inconsistent with equity and good conscience.  In the case sub judice, this is extremely poignant, since the Plaintiff has proceeded in a purely political course of action in an

13

attempt to "finger" the Defendants without regard to Robodial's part in this venture. In short, the interest of the defendants are not severable from that of Robodial.

If there are parties who are absent from the suit who are indispensible, then dismissal is proper. **Webster v. Fall**, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411. When the interests in the subject matter of the suit and relief sought are so bound up with the other parties that their interest would directly effect the outcome, they must be joined. **Barney v. Baltimore**, 73 U.S. 280, 6 Wall, 280, 18 L.Ed. 825. Here both the defendants and Robodial have interests which are connected to the manner in which the FCC regulations are performed. 47 C.F.R. § 64.1200(b). Robodial has the equipment which made the Robocalls in Pennsylvania. It was in the business of mass media communications to the public for a fee. Each call was initiated both at and from its facilities.

Any decree by this court involving injunctive relief and filing would be binding on Robodial who did business in Maryland. **California v. Southern Pacific Comp.**, 157 U.S. 229, 15 S.Ct. 591, 39 L.Ed 683. There is no danger that Robodial's joinder would destroy complete diversity since the parties are citizens of different states, in which the interstate commerce clause allows Congress to regulate the medium ("telephone'). This is the subject matter of the controversy. **Nat'l Union Fire Ins. Co. v. Rite Aid S. Carolina**, 210 F. 3d 24 6 (4th Cir. 2000).

The Plaintiff has simply given Robodial a pass with the primary objective of political retaliation and not the best interest of the citizens of Maryland. It is noted by the Defendants that dismissal of a case under Rule 19 is a drastic remedy. It must be used sparingly to be sure. **Teamsters Local Union No. 171 v. Deal Driveaway Co.**, 173 F.3d 915, 917-18 (4th Cir. 1999). Such a result is indicated herein. It is abundantly clear that this Court would not abuse its discretion in finding Robodial to be a indispensible party. **H.D. Corp. v. Ford Motor Co.**, 791

F.2d 987, 993 (1st Cir. 1986).  The interest of the courts and the public in this case are complete and consistent with the complete resolution of this controversy.  **Provident Trademens Bank and Trust Co. v. Patterson**, 390 U.S. 102, 111 (1968).  The Court may provide an adequate remedy for each party in this case under the direction of dismissal Rule 19(b).

## CONCLUSION

The Plaintiff has failed to state a claim against the defendants, the Court lacks subject matter jurisdiction and the Plaintiff has failed to join a party under Rule 19.  For these reasons stated herein, Defendants respectfully request this Court to dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

_____/s/_____
EDWARD SMITH, JR., ESQUIRE
Federal Bar #:  01182
2225 St. Paul Street
Baltimore, MD 21218
(410) 366-0494
(410) 366-6182 - Fax
njedBM@verizon.net
Attorney for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of December, 2010, a copy of the aforegoing *Memorandum in Support of Motion To Dismiss Complaint* was electronically transmitted to:

William D. Gruhn, AAG (bgruhn@oag.state.md.us)
Philip D. Ziperman, AAG (pziperman@oag.state.md.us)
200 St. Paul Street, 16th Floor
Baltimore, MD  21202
Attorneys for Plaintiff

_____/s/_____
EDWARD SMITH, JR., ESQUIRE