IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STATE OF MARYLAND,                    )
OFFICE OF THE ATTORNEY GENERAL,       )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )        Case No. 10-CV-03183-CCB
                                      )
UNIVERSAL ELECTIONS, INC., *et al.*   )
                                      )
        Defendants.                   )

## OPPOSITION TO MOTION TO DIMISS

The Plaintiff, the State of Maryland, by and through Attorney General Douglas F. Gansler, opposes the Motion to Dismiss filed by Defendants, stating in support hereof, the following:

## INTRODUCTION

The State of Maryland, Office of the Attorney General (hereafter "Attorney General"), brought this action against Defendants Universal Elections, Inc., Julius Henson and Rhonda Russell, for making more than 112,000 anonymous prerecorded telephone calls to Maryland residents in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* Defendants do not dispute that that they made telephone calls to Maryland residents, failed to identify the party initiating the call at the beginning of their prerecorded message and did not include their telephone number or address in the message, as required by the TCPA.

Defendants nevertheless argue that the Attorney General's Complaint fails to state a claim upon which relief may be granted because the Complaint does not specifically allege that any Maryland resident received any of the Defendants' prerecorded messages or that any Maryland residents received more than one of the messages. No such requirements are contained in the TCPA, which holds persons

strictly liable when they make a telephone call using an automatic telephone dialing system without including the disclosures required by the TCPA.

Defendants also misapply the TCPA when they argue that the Complaint must be dismissed because the third-party they used to deliver their prerecorded messages is not named as a party. The Complaint clearly alleges that the Defendants made the offending calls in violation of the TCPA. The fact that Defendants used another company's auto-dialing system to place the calls does not excuse their violations or require the joinder of that company as a party in order to state a claim upon which relief can be granted that may be fully adjudicated by the Court.

Defendants argue the Complaint should be dismissed because they contend the individual Defendants cannot be held liable under the TCPA. First, this argument does not support dismissal of the Complaint as to the corporate Defendant. Second, officers and employees of a corporation have routinely been held liable for statutory violations that they commit or authorize, including violations of the TCPA.

Lastly, Defendants argue without any support that this Court lacks jurisdiction over the subject matter. *See* Motion to Dismiss, p. 5. The statute itself contradicts this argument. Under the TCPA, a state Attorney General may commence an action in federal court for injunctive relief and damages. 47 U.S.C. § 227(f).

For these reasons, which are more fully set forth below, the Attorney General's Complaint should not be dismissed because it sets forth facts that, if proven to be true, establish violations of the TCPA by each of the Defendants.

## THE TELEPHONE CONSUMER PROTECTION ACT

Congress enacted the TCPA in order to address significant consumer abuses committed by persons using the telephone for sales, advertising or to deliver automated messages, In enacting the TCPA, Congress determined that automated residential calls were "more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons" because such calls "cannot interact with the customer except in preprogrammed ways" and "do not allow the caller to feel the frustration of the called party . . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(3), (6), (10), 105 Stat. 2394, 2394-95 (1991), S. Rep. 102-177 at 1272 (attached hereto as Exhibit A).  Discussing the purpose of the TCPA and its remedies, the Ninth Circuit has observed "[c]ustomers who wanted to remove their names from calling lists were forced to wait until the end of taped messages to hear the callers' identifying information." *Moser v. Federal Communications Comm'n*, 46 F.3d 970, 971 (9th Cir. 1995).  In order to address these privacy concerns, the TCPA requires persons who use automatic dialing systems to identify themselves at the beginning of the messages they deliver to consumers.  With this information, consumers who do not wish to receive unsolicited calls can instruct the persons or entities that initiate such calls to stop calling them and, if such calls persist, report violations under the do-not-call provisions of the TCPA (47 U.S.C. § 227(c)).

The parts of the TCPA that are pertinent to this requirement and which are the focus of this lawsuit provide:

It shall be unlawful for any person within the United States--

> (A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards. . . .

3

. . . .

> (3) Artificial or prerecorded voice systems
>
> The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that--
>
> > (A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual. . . .

*See* 47 U.S.C. § 227(d)(3)(A)(i) and (ii).  The first of these two provisions, subparagraph (d)(3)(A)(i), requires that senders of prerecorded messages clearly state, at the beginning of their message, the identity of the business, individual, or other entity initiating the call.  The second, subparagraph (d)(3)(A)(ii), requires that senders clearly state, during or after any message, the telephone number or address of the business, individual or entity initiating the call.  The FCC's regulations implementing the TCPA have clarified that the information that must be disclosed during the call is the name and address or phone number of the business that initiated the call, and not the autodialer through which the call was placed. *See* 47 C.F.R. § 64.1200(b) (stating that artificial or prerecorded messages shall "state clearly the telephone number (*other than that of the autodialer or prerecorded message player that placed the call*) of such business, other entity, or individual.") (emphasis supplied).

The TCPA specifically authorizes the Attorney General of a state to commence an action in a federal court where he or she "has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of [the TCPA] or the regulations prescribed under [it] . . ." and that such an action may seek injunctive relief, as

well as damages up to $500 for each violation (which may be increased to $1,500 if the court finds the violations to be willful or knowing).  47 U.S.C. § 227(f)(1) & (2).

## STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  That statement must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir. 1969). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 557 (citations omitted).

## WELL-PLED FACTS

Universal Elections is a Maryland limited liability corporation that offers various services to candidates for political office, including broadcasting prerecorded voice messages to voters. (Complaint,

¶ 6).  Defendant Henson is an owner and officer of the company, and Defendant Russell is an employee

of the company. (*Id.* at ¶¶ 8-9).

The Defendants were hired by the campaign of gubernatorial candidate Robert L. Ehrlich, Jr. to

deliver a prerecorded message to Maryland voters on Election Day, November 2010. (*Id.* at ¶¶ 10-14).

The message to be delivered was recorded by the Defendants and stated as follows:

> Hello.  I'm calling to let everyone know that Governor O'Malley and
> President Obama have been successful.  Our goals have been met.  The
> polls were correct and we took it back.  We're okay.  Relax.  Everything is
> fine.  The only thing left is to watch it on TV tonight.  Congratulations and
> thank you.

(*Id.* at ¶ 14).  Noticeably absent from the message was any disclosure of the name and address or phone

number of the person or entity that initiated the call. (*Id.* at ¶ 16).

Defendants hired an autodialer named Robodial.org, LLC ("Robodial") and uploaded two copies

of the above quoted message onto Robodial's website. (*Id.* at ¶ 14).   Defendants also uploaded a list

containing the names of more than 112,000 telephone numbers belonging to Maryland residents to

whom they wanted the prerecorded message to be delivered. (*Id.* at ¶ 13).  The list was comprised

primarily of residents of Baltimore City and Prince George's County, most of whom had registered to

vote as Democrats. (*Id* at ¶ 13).  Robodial was then paid by the Defendants to deliver the above quoted

message. (*Id.* at ¶¶ 11-12).

The Defendants did not identify either themselves or the Ehrlich campaign in any way, as

required by the TCPA, in order to disguise the purpose of their calls – which was to suppress the votes

of Democratic voters.  Had the Defendants identified in the manner required by the TCPA that the calls

were being made on behalf of the Ehrlich campaign, it would have changed the message conveyed by

the calls – that Governor O'Malley had been successful and did not need the recipients' votes. (*Id.* at ¶ 16).

## ARGUMENT

### A.    The Well Pled Facts In The Complaint Establish The Defendants Violated The TCPA.

Under the TCPA sections that are cited by the Attorney General in the Complaint, it is "unlawful for any person within the United States . . . to make any telephone call using an automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under . . . [subsection (d) of the TCPA]." Subsection (d) of the TCPA requires persons who make telephone calls using autodialers to identify the party who initiated the calls and provide either its address or phone number. 47 U.S.C. § 227(d); 47 C.F.R. § 64.1200(b); *see also Worsham v. Ehrlich,* 181 Md. App. 711, 728-29, 957 A.2d 161, 171 (2008).

Defendants do not dispute that when they made more than 112,000 calls to Maryland residents they failed to identify, by name, and address or phone number, the party initiating the call, as is alleged in the Attorney General's Complaint. Nevertheless, Defendants argue that such facts do not establish a claim upon which relief can be granted because they contend the Complaint fails to establish that any of the 112,000 messages were actually received by Maryland citizens. (*See* Motion to Dismiss, p. 7). Defendants also argue, without the benefit of any legal support, that the Complaint fails to state a claim upon which relief can be granted because it does not allege that any Maryland citizen received more than one of Defendants' calls. *See* Motion to Dismiss, pp. 11-12.

This Court could easily infer from the plain language of the Complaint that some of the more than 112,000 Marylanders whom Defendants called actually received the call. Indeed, if

no calls had been received, the Defendants' violations of the TCPA could not have been discovered by the Attorney General.  Notwithstanding these facts, the plain language of the statute does not require that consumers receive the offending message or that consumers must be called more than once to state a violation of the TCPA.

"In examining statutory language, generally, words are given their common usage, and courts are not free to read into the language what is not there, but rather should apply the statute as written." *United States v. Murphy,* 35 F.3d 143, 145 (4th Cir.1994), *cert. denied,* 513 U.S. 1135 (1995).  It is a court's duty to "adhere faithfully to the rules of statutory interpretation rather than to 'exercise[ ] a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship.'" *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930).  To determine whether the language is plain, "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole" must be considered. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (citations omitted); *see also United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 506 (2d Cir.1991) ("The words of a statute should be given their normal meaning and effect in absence of showing that some other meaning was intended."); *United States v. Stokley,* 881 F.2d 114, 116 (4th Cir. 1989) ("In the absence of a contrary indication, the court must assume the drafters of a statute intended to convey the ordinary meaning attached to the language.").

The plain language of the TCPA is that it is unlawful for persons or entities, such as the Defendants, to "*initiate* any *communication* using a telephone facsimile machine, or to *make* any *telephone call* using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection . . . ." 47 U.S.C. §

8

227(d)(1)(A).  The unambiguous language of the TCPA is that persons or entities that "initiate"

or "make" any "communication" or "telephone call" are liable for damages if they do not

identify themselves in the call. *Id.* at § 227(d)(3)(A).  The requirement that each call include

information identifying the caller at its commencement serves the purpose for which the TCPA

was enacted, to protect the privacy interests of recipients of automated messages by giving call

recipients an opportunity to end the call at its commencement, to permit the recipient to contact

the party initiating the call and to report violations of the do-not-call provisions contained in the

TCPA.[1]  These procedural requirements do not include a requirement that consumers receive

multiple messages.  They do not require any consumer to listen to the message.  Accordingly,

under the plain language of the TCPA, the Complaint adequately sets forth facts that establish

violations of the TCPA for which relief may be granted: Defendants initiated phone calls to

Maryland residents using an automated dialing system, but did not include the disclosures

required by the TCPA.  Accordingly, the Motion to Dismiss should be denied.

**B.      Defendants Russell And Henson Are Liable For The Violations Of The TCPA That They Directly Participated In Or Authorized.**

Defendants are not shielded from liability because they were working for a corporation when

they violated the TCPA.  It is well established under Maryland law that individuals are personally liable

for their wrongful conduct when acting as employees or officers of a corporation if they "personally

commit," "inspire," "participate in," "contribute[] to" or "help[] to bring about" the wrongdoing. *Tedrow

v. Deskin*, 265 Md. 546, 550-51, 290 A.2d 799, 802-03 (1972); *see also, Central Collection Unit v.

Kossol,* 138 Md. App. 338, 348-49, 771 A.2d 501, 506-507 (2001).  The Federal Trade Commission has

---

[1] 47 U.S.C. 227(c).

9

similarly held officers liable for violations of section 5 of the Federal Trade Commission Act that were committed on behalf of a corporation if the officers participated directly in the practices or knew or should have known of the practices and had the authority to control them. *See e.g. F.T.C. v. Amy Travel Service, Inc.*, 875 F.2d 564, 573-74 (7th Cir.), *cert denied*, 493 U.S. 954 (1989); *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997); *see also Metromedia Co. v. WCBM Maryland, Inc.*, 327 Md. 514, 610 A.2d 791 (1992) (CEO of corporation which was unlawfully occupying improved real property could be held personally liable for damages in ejectment action). The Maryland Court of Appeals has expressly adopted the 7th Circuit standard established in *F.T.C. v. Amy* in the case of *Consumer Protection Division v. Morgan*, 387 Md. 125, 174-76, 874 A.2d 919, 948-49 (2005).

Similarly, officers acting on behalf of a corporation have been held liable for violations of the TCPA. In *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (2001), the State of Texas sued the sender of unsolicited facsimile advertisements for violations of the TCPA. The officers who were named as defendants in the lawsuit argued, much as the Defendants argue here, that they could not be held personally liable under the TCPA as officers of a corporation. *American Blastfax*, 164 F. Supp. 2d at 897. Rejecting this argument, the United States District Court for the District of Texas held "if the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable." *American Blastfax*, 164 F. Supp. 2d at 897, citing *United States v. Pollution Serv. of Oswego, Inc.*, 763 F.2d 133, 134-35 (2d Cir. 1985) (finding officers liable under Rivers and Harbors Act for direct, personal involvement in illegal dumping; distinguishing *Sexton Cove* as involving liability "premised solely on [defendants'] corporate offices or ownership"), *cert. denied*, 474 U.S. 1037 (1985); *see also Citronelle-Mobile Gathering, Inc. v. Herrington*, 826 F.2d 16, 25

(Temp.Emer.Ct.App.1987) ("[P]ersonal responsibility for corporate liability may attach when the individual's wrongful conduct causes the violation of a statute and accompanying regulations such as the crude oil pricing laws."), *cert. denied,* 484 U.S. 943 (1987); *BEC Corp. v. Environmental Protection Agency*, 256 Conn. 602, 775 A.2d 928 (2001) (discussing "an emerging body of federal case law holding individual corporate officers liable for violations of federal environmental laws when those officers either participated in those violations, [or] controlled or supervised the corporate activities that resulted in the violations").

Applying this standard to the facts before it, the District Court in *American Blastfax* held that the two corporate officers named as defendants were personally liable because they controlled the day-to-day operations of American Blastfax and they "had direct, personal involvement and ultimate control over every aspect of Blastfax's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct." *American Blastfax*, 164 F. Supp. 2d at 898-99.  Similarly, in the instant case, the individual Defendants are alleged to have directly participated in the wrongful conduct – Defendants hired an autodialing company on Election Day 2010 (Complaint, ¶¶ 11-12); Defendants uploaded a list of more than 112,000 telephone numbers belonging to Maryland residents onto the autodialer's website (*id.* ¶ 13); Defendants recorded a deceptive message, the purpose of which was to discourage Democratic voters from voting in the gubernatorial election (*id.* at ¶¶ 13-14); and Defendants omitted the identifying information required by the TCPA in their recorded message. (*Id.* at ¶ 16).  The Complaint alleges facts that are sufficient, if true, to establish that the individual Defendants participated in the violations of the TCPA and may therefore be held individually liable.

C.    **Robodial.org, LLC Is Not A Necessary Party.**

Contrary to the Defendants' argument, Robodial.org, LLC is not a necessary party and, even if it

were, dismissal would be improper.  Fed. R. Civ. P. 19 provides, where pertinent:

> **(a) Persons Required to Be Joined if Feasible.**
>
> > **(1) *Required Party*.** A person who is subject to service of process and
> > whose joinder will not deprive the court of subject-matter jurisdiction
> > must be joined as a party if: (1) in that person's absence, the court cannot
> > accord complete relief among existing parties; or (2) that person claims an
> > interest relating to the subject of the action and is so situated that
> > disposing of the action in the person's absence may: (i) as a practical
> > matter impair or impede the person's ability to protect the interest; or (ii)
> > leave an existing party subject to a substantial risk of incurring double,
> > multiple, or otherwise inconsistent obligations because of the interest.  If
> > the person has not been so joined, the court shall order that the person be
> > made a party.

Subpart (b) of the Rule provides for dismissal of an action only when "a person who is required

to be joined if feasible cannot be joined" and the court determines "whether, in equity and good

conscience, the action should proceed among the existing parties or should be dismissed."  Fed.

R. Civ. P. 19(b); *Provident Tradesmens Bank and Trust Co. v. Patterson*, 390 U.S. 102, 123-24

(1968).  Accordingly, subpart (a) of Rule 19 identifies categories of persons who should be

joined by court order if they can be and subpart (b) addresses whether the suit should be

dismissed when a person who falls within 19(a) cannot be joined.  *See Teamsters Local Union*

*No. 171 v. Keal Driveway Company*, 171 F.3d 915, 917-18 (4th Cir. 1999) ("Rule 19 creates a

two-step inquiry: first, whether a party is necessary to the matter under consideration; and

second, if a necessary party is unavailable, whether the proceeding can continue in that party's

absence.  If it cannot, the party is indispensable and the action should be dismissed.")

Defendants never explain in their pleading why they believe Robodial is a necessary party, and if so, why it cannot be added as a party.  In any event, Robodial is not a necessary party for purpose of resolving the Attorney General's claim against Defendants.  Any claim that the Attorney General could have brought against Robodial would have been separate and distinct from the claim that the Attorney General has asserted against Defendants.  The FCC has made it clear that broadcasters, such as Robodial, who send communications that violate the TCPA are to be held to a different standard of liability from the standard used for persons who make or initiate communications that violate the TCPA.  The FCC has stated that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the [TCPA]" and that broadcasters who operate like common carriers "are not liable for compliance with this rule" ... "unless they demonstrate[] a high degree of involvement in, or actual notice of, the unlawful activity and fail[] to take steps to prevent such . . . transmissions." *Kopff v. Battaglia,* 425 F.Supp. 2d 76, 91-92 (D.D.C. 2006) quoting 10 F.C.C.R. 12,391, 12,407 (1995); *see also* 47 C.F.R. § 64.1200(a)(3)(ii); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 F.C.C.R. 8752, 8780 (1992) (discussing common-carrier liability under the TCPA and applying a standard of "a high degree of involvement or actual notice" and failure to act).   Thus, Defendants' liability cannot be dependent on the part of Robodial.

Robodial is not a party whose joinder is necessary under Rule 19 because the Court can completely resolve the Attorney General's claim against Defendants without impairing the Defendants', Robodial's, or anyone else's interests, or creating multiple or inconsistent obligations.  Moreover, even if the Defendants could successfully argue that Robodial is a

necessary party, dismissal of this case is not the appropriate remedy.  There has been no showing

that Robodial cannot be joined as a Defendant, which is the remedy required by Rule 19(a).

*American Civil Liberties Union of Md. v. Board of Public Works of Md.*, 357 F.Supp. 877, 884

(D.C. Md. 1972) ("Since all of the non-party recipients are amenable to suit in this Court and

could be joined in the instant suit, the standards of 19(b) are not applicable."); *see also* 7 Wright,

Miller & Kane, Federal Practice and Procedure: Civil 3d § 1609, n. 9 (2001) ("[F]ederal courts

are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general,

dismissal will only be ordered when the defect cannot be cured and serious prejudice or

insufficiency will result.")

**D.      The TCPA Provides This Court With Jurisdiction Over The Subject Matter.**

In itheir Memorandum in support of its Motion to Dismiss, Defendants state "[t]here is

no subject matter jurisdiction." *See* Motion to Dismiss, p. 5.  Curiously, Defendants never

elaborate in their pleading why they contend this Court lacks subject matter jurisdiction or

provide any legal support for this bald statement.  Section 227(f)(1) authorizes States, through

their Attorneys General, to commence actions against persons who violate any of the

requirements of the TCPA for injunctive relief and damages[2] and subpart (2) of this section gives

---

[2] 47 U.S.C. 227(f)(1) provides as follows: "Whenever the attorney general of a State, or an
official or agency designated by a State, has reason to believe that any person has engaged or is engaging
in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of
this section or the regulations prescribed under this section, the State may bring a civil action on behalf of
its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages
for each violation, or both such actions. If the court finds the defendant willfully or knowingly violated
such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to
not more than 3 times the amount available under the preceding sentence."

federal courts exclusive jurisdiction over such actions.  Accordingly, the TCPA expressly

provides this Court with jurisdiction over the subject matter of this lawsuit.

## **CONCLUSION**

For each of the reasons set forth herein, the Defendants' Motion to Dismiss should be

denied.

Respectfully submitted

DOUGLAS F. GANSLER
Attorney General

By: _____
William D. Gruhn, Bar No. 03790
Philip D. Ziperman, Bar No. 12430
Assistant Attorneys General
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
bgruhn@oag.state.md.us
pziperman@oag.state.md.us
(410) 576-6374
(410) 576-6566 (fax)