IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND<br>OFFICE OF THE ATTORNEY GENERAL<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSAL ELECTIONS, INC., ET AL.<br><br>    Defendants. | *<br>*<br>*   Case No. WDQ 10CV3183<br>*<br>*<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS

### ARGUMENT

The TCRA and 47 C.F.R. § 64.1200(b) of the FCC Rules are Unconstitutional and violate the First Amendment of the U.S. Constitution, in this case.

Adopted within the Bill of Rights in 1791, the Free Speech Clause of the First Amendment reads as follows:

"Congress shall make no law…abridging the freedom of speech".

History has established that political speech was at the center of the Founder's concerns when they drafted the phrase above. Central to the idea of freedom of speech is that an individual is protected from its abridgment by Federal, State and local governments. Nor can there be any doubt that since 1886 the Supreme Court has ruled that a corporation is a "person" for purposes of the Fourteenth Amendments. They are clearly entitled to First Amendment protections. **Winters v. N.Y.**, 333 U.S. 507, 510, 68 S.Ct. 665,

1

668, 92 L.Ed.  The Supreme Court has recognized that, "The First Amendment has its fullest and most urgent application to speech when it is uttered during a campaign for political office". **Eu. v. San Francisco County Dem. Central Comm.**, 489 U.S. 214, 223, 109 S. Ct. 1013, 1020, 103 L.Ed. 2d 271, 282 (1989).  Moreover the First Amendment centers its fullest protection to political expression of ideas, to bring about and assure political and social changes desired by the people of this country.  **Roth v. U.S**, 354 U.S. 476, 1 L.Ed. 2d. 1498, 1506 (1957) Not only is the debate to be wide open, but the manner in which the changes have been historically managed in political campaigns should be unrestrained.  **McIntyre v. Ohio Elect. Comm'n**, 514 U.S. 334, 347, 115 S. Ct. 1511, 1518-19, L.Ed.2d 426, 439-440 (1995).  The so called "dirty tricks" of politics have been well known to the body politic of the United States of America.  The first campaign for President of the United States in the 1790's featured Thomas Jefferson who hired journalist and pamphleteer, James Thomas Callender of Philadelphia, to slander Alexander Hamilton.  *"The History of the United States for the Year 1796, Volumes V and VI"* Callender printed at Philadelphia 1797.  Donald Segretti of the Committee to Re-Elect President Nixon took the term "rat fucking" to a new high, in voter suppression and dirty tactics.  William Saffire, New York Times Magazine "Dirty Tricks" (2-3-2008).  Not only discrediting tactics, but voter psychological manipulations have been allowed in the media since the early 1960's to the present day.  While the practices are certainly of questionable ethical techniques, they nevertheless provide for robust debate and decisions to be made by the

electorate. who as citizens are responsible for their individual vote.  The American public must own the ability to discern deception when it comes to the most cherished possession of citizenship – the right to use the vote.  Congress cannot, nor should it legislate the ultimate responsibility of the people to receive information both good and bad.  Government should not regulate political messages for truthfulness.  There can be no Constitutional litmus test for political content no matter what the aim of the regulation.  Where a statute restricts, or burdens political speech, i.e. "dirty tricks", "deception", then government must show an overriding compelling reason to suppress it by regulation even regarding the much less so called commercial speech.  **U.S. v. Playboy Entm't Group, Inc.**, 529 U.S. 803, 813, 120 S. Ct. 1878, 146 L.Ed. 2d. 865, 879 (2000).  When a law or regulation allowed by Congress burdens core political speech, then the most exacting scrutiny is employed".  **McIntyre, Ibid.**  The conduct of campaigns for political office is guaranteed by the First Amendment from government intrusion through rule making of the Congress and/or the FCC.  **Monitor Patriot Co. v. Roy**, 401 U.S. at 272, 91 S. Ct. at 625, 28 L.Ed. 2d. at 41.  It is the advocacy of the elected that must be protected and can in no way may it be abridged by Congress.  **Burson v. Freeman**, 504 U.S. 191, 196, 112 S. Ct. 1846, 1850, 119 L.Ed. 2d. 5 (1992).

   In the case sub judice, the advocacy of the political campaign presented a message which the voter was free to apply his/her common sense, intelligence and savoy to come to a conclusion.  The message itself gave no

command, inspired no fright, nor can it be said that anyone who may have heard it was prone to lethargy.  Applying any objective standard to its content reveals that it was in fact true.

> "I'm calling to let everyone know that Governor O'Malley and President Obama have been successful…Our goals have been met…The polls are correct and we took it back.  We're okay. Relax.  Everything is fine.  The only thing left is to watch it on TV tonight.  Congratulations and thank you…"

Appellate courts have roundly rejected the rational that statutory measures may be enacted by Congress, or the States to prevent fraud, or to protect the public in political contest.  **Buckley v. Valeo**, 424 U.S. 1, 19, 96 S. Ct. 612, 634, 46 L.Ed. 2d. 659, 687 (1976).  Where political activity is at issue to effect political speech, then it is to be protected.  **EEC v. Beaumont**, 539 U.S. 146, 123 S. Ct. 2200, 156 L.Ed. 2d. 179 (2003).

This court is obliged to use the 'strict scrutiny' test as it related to this particular FCC regulation.  The Supreme Court has spoken on this issue in many forms, but central to the analysis is the freezing effect that such regulations may have on free political speech.  **Elect. Comm'n v. Mass Citizens for Life**, 479 U.S. 239, 259, 107 S. Ct. 616, 628, 93 L.Ed. 2d. 539, 557 (1986).  **EEC v. Colordo Rep. Fed. Camp Comm.**, 533 U.S. at 437, 121 S.Ct. at 2356, 150 L.Ed. 2d.

A cursory review of the instant regulation provides scant rationale for the burden it places on Constitutional Speech, 47 C.F.R. § 64.1200(b).  The ability of a telephone subscriber to opt out of a future call by having identifying information for future action.  The damage promoted even to deceptive political

speech is far greater than the evil it seeks to prevent. When placed in the clear context of strict scrutiny, the regulation cannot, nor should it Constitutionally abridge the defendant's First Amendment Right To Free Speech.

        Respectfully submitted,

        _____/s/_____
        EDWARD SMITH, JR., ESQUIRE
        Federal Bar #:  01182
        2225 St. Paul Street
        Baltimore, MD 21218
        (410) 366-0494
        (410) 366-6182 - Fax
        njedBM@verizon.net
        Attorney for Defendants

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 28th day of December, 2010, a copy of the aforegoing *Memorandum In Support of Supplemental Motion To Dismiss* was electronically transmitted to:

        William D. Gruhn, AAG (bgruhn@oag.state.md.us)
        Philip D. Ziperman, AAG (pziperman@oag.state.md.us)
        200 St. Paul Street, 16th Floor
        Baltimore, MD  21202
        Attorneys for Plaintiff

        _____/s/_____
        EDWARD SMITH, JR., ESQUIRE