# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND,<br>OFFICE OF THE ATTORNEY GENERAL,<br><br>     Plaintiff,<br><br>     v.<br><br>UNIVERSAL ELECTIONS, INC., et al.<br><br>     Defendants. | Case No. 10-CV-03183-CCB |

## UNITED STATES' MEMORANDUM IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS AND IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

*OF COUNSEL*:
SUSAN LAUNER
Deputy Associate General Counsel –
Trial and Enforcement
JACOB LEWIS
Associate General Counsel
ELLEN MILES
Attorney Advisor
Office of the General Counsel
Federal Communications Commission
445 12th Street S.W.
Washington, D.C. 20554

TONY WEST
Assistant Attorney General

ROD J. ROSENSTEIN
United States Attorney, District of Maryland

JOHN R. GRIFFITHS
Assistant Director,
Federal Programs Branch

BRADLEY H. COHEN
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division

**ATTORNEYS FOR UNITED STATES**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATUTORY AND FACTUAL BACKGROUND ..................................................... 2

    I.      The Telephone Consumer Protection Act ............................................. 2

    II.     Factual and Procedural Background ..................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.      THE TCPA'S TWO DISCLOSURE REQUIREMENTS ARE
         SUBJECT TO INTERMEDIATE FIRST AMENDMENT
         SCRUTINY BECAUSE THEY ARE CONTENT NEUTRAL
         REGULATIONS OF ONE-WAY COMMUNICATIONS INTO
         THE HOME ..................................................................................................... 7

    II.     THE TCPA'S DISCLOSURE REQUIREMENTS PROMOTE
         MULTIPLE, SUBSTANTIAL GOVERNMENT INTERESTS ........................ 11

         A.     The TCPA's Disclosure Requirements Promote a
               Substantial Governmental Interest in Residential Privacy ...................... 11

         B.     The TCPA's Disclosure Requirements Further a
               Substantial Government Interest in Effective Enforcement
               of Other Important State and Federal Laws ............................................. 12

         C.     The TCPA's Disclosure Requirements Promote an
               Informed Citizenry .................................................................................. 14

    III.    THE TCPA'S DISCLOSURE REQUIREMENTS ARE
         NARROWLY TAILORED TO ACHIEVE ITS PURPOSES ............................ 15

    IV.   THE TCPA'S DISCLOSURE REQUIREMENTS ALSO
         WITHSTAND STRICT SCRUTINY ................................................................ 16

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

Am. Target Advertising, Inc. v. Giania,
 199 F.3d 1241 (10th Cir. 2000) ..................................................... 13

Bland v. Fessler,
 88 F.3d 729 (9th Cir. 1996) ........................................................ 11

Buckley v. Valeo,
 424 U.S. 1 (1976) ............................................................ 12, 14, 17

Caplin & Drysdale Chartered v. United States,
 491 U.S. 617 (1989) ................................................................ 12

Citizens United v. FEC,
 130 S.Ct. 876 (2010) ........................................................... 13, 17

Clark v. Community for Creative Non-Violence,
 468 U.S. 288 (1984) ................................................................. 8

Frisby v. Schultz,
 487 U.S. 474 (1988) ........................................................... 7, 11, 16

Hill v. Colorado,
 530 U.S. 703 (2000) ........................................................... 9, 11, 16

Mainstream  Marketing Servs., Inc. v. FTC,
 358 F.3d 1228 (10th Cir. 2004) ..................................................... 11

McConnell v. FEC,
 540 U.S. 93 (2003) ........................................................... 13, 14, 17

McIntyre v. Ohio Elect. Comm'n,
 514 U.S. 334 (1995) ................................................................. 8

Members of the City Council of L.A. v. Taxpayers for Vincent,
 466 U.S. 789 (1984) ............................................................ 8, 9, 15

Minn. Citizens Concerned for Life v. Kelley,
 427 F.3d 1106 (8th Cir. 2005) ...................................................... 17

Moser v. FCC,
    46 F.3d 970 (9th Cir. 1995) ................................................... 9

Nat'l Ass'n of Mfrs. v. Taylor,
    549 F. Supp. 2d 33 (D.D.C. 2008) ................................................... 17

Nat'l Fed'n of the Blind v. FTC,
    420 F.3d 331 (4th Cir. 2005) ................................................... 10, 12

Public Citizen, Inc. v. Pinellas Cty.,
    321 F.Supp.2d 1275 (M.D. Fla. 2004) ................................................... 13

SKF USA, Inc. v. U.S. Customs and Border Protection,
    2009 WL 398263 (Fed. Cir. Feb. 19, 2009) ................................................... 12

Sable Comm'ns of Cal., Inc. v. FCC,
    492 U.S. 115 (1989) ................................................... 16

San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,
    483 U.S. 522 (1987) ................................................... 8

Turner Broadcasting Sys., Inc. v. FCC,
    512 U.S. 622 (1994) ................................................... passim

United States v. Harriss,
    347 U.S. 612 (1954) ................................................... 10

Van Bergen v. Minnesota,
    59 F.3d 1541 (8th Cir. 1995) ................................................... 9

## STATUTES

Ind. Code § 24-5-14-5 ................................................... 13

N.D. Cent. Code § 51-28-02 (same) ................................................... 13

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2 (3), (6), (10), 105
    Stat. 2394, 2394-95 (1991) ................................................... 2

28 U.S.C. § 2403(a) ................................................... 1

47 C.F.R. § 64.1200(b)(1)................................................... passim

47 U.S.C. § 227(d)(3)(A)(1)-(2) ................................................... passim

# LEGISLATIVE HISTORY

H.R. Rep. 102-317 at 25 (1991) .................................................................................................... 13

S. Rep. 102-177 at 7 (1991) ........................................................................................................ 2

Computerized Tel. Sales Calls and 900 Service: Hearing Before the S. Comm. On
      Commerce, Science, and Transp., 102d Cong. 68 (1991) ................................................. 3

The Automated Telephone Consumer Protect Act of 1991; S. 1410 The
      Telephone Advertising Consumer Protection Act; and S. 857, Equal
      Billing for Long Distance Charges: Hearing on S. 1462 Before the
      Subcomm. On Communications of the S. Comm. on Commerce, Science
      and Transportation, 102d Cong. 11-12 (1991) ................................................................. 4

# INTRODUCTION

Plaintiff, the State of Maryland, through its Attorney General, has brought suit against Defendants Universal Elections, Inc., Julius Henson, and Rhonda Russell, for placing anonymous, prerecorded telephone calls to the homes of more than 112,000 residents of Maryland, in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"). Defendants do not dispute that they initiated prerecorded telephone messages that failed to identify the party initiating the call at the beginning of the prerecorded message and failed to include their telephone number or address, as required by the TCPA. In their Supplemental Motion to Dismiss, Defendants argue that the prerecorded messages they disseminated through an automated telephone dialing system constitute political speech, that the TCPA provisions in question are subject to strict scrutiny, and that these provisions infringe upon constitutionally protected speech. Because Defendants have questioned the constitutionality of a federal statute, the United States has elected to intervene in order to present facts and law relating to the question of the disclosure requirements' constitutionality. See 28 U.S.C. § 2403(a).

Defendants' Supplemental Motion to Dismiss should be denied because the TCPA provisions being enforced by the Maryland Attorney General do not violate the First Amendment. Contrary to Defendants' assertion, intermediate First Amendment scrutiny applies to the Court's review of the TCPA's disclosure requirements because these requirements are content-neutral regulations of a medium whose special characteristics justify intervention to protect consumers from unwarranted intrusions upon the privacy of their homes. See Turner Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 661 (1994). Moreover, the TCPA's disclosure requirements withstand this intermediate scrutiny because they are narrowly tailored to advance important governmental interests in protecting residential privacy from the intrusion and annoyance of unidentified prerecorded messages and in facilitating enforcement of other federal

and state laws enacted to curtail abuses of automated and prerecorded telephone calls. In addition, the TCPA's disclosure requirements assist the recipients of prerecorded messages in evaluating the message that is being communicated through the use of automated dialing systems, in keeping with the important government interest in facilitating informed evaluation of political advocacy. Because the challenged TCPA provisions are content-neutral and apply only to prerecorded messages disseminated through automated dialing machines, they burden no more speech than is necessary to accomplish their important purposes. For many of the same reasons, even assuming *arguendo* that strict scrutiny applies, the disclosure requirements would also survive.

Thus, as elaborated below, Defendants' challenge to the constitutionality of the TCPA's disclosure requirements should be rejected.

## STATUTORY AND FACTUAL BACKGROUND

### I.     The Telephone Consumer Protection Act

Congress enacted the TCPA in order to protect the privacy interests of residential telephone subscribers by regulating the manner by which unsolicited, automated telephone calls could be placed into the homes of those subscribers. When Congress enacted the TCPA, it expressly found that many consumers had become "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" (even then numbering more than 18 million per day), and furthermore that residential telephone subscribers found artificial or prerecorded telephone calls—regardless of the "content or the initiator" of the call—to be "a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2 (3), (6), (10), 105 Stat. 2394, 2394-95 (1991). See also S. Rep. No. 102-177, at 7 (1991) (Attached as Exhibit A) (finding a "substantial governmental interest in protecting telephone subscribers' privacy rights from unsolicited telephone solicitations"). For example, in hearings

held prior to the statute's adoption, Congress received evidence that more than 2,300 subscribers had complained to the FCC within the preceding year about machine-generated calls, including the complaint that "the calling party does not identify him- or herself."  Computerized Tel. Sales Calls and 900 Service: Hearing Before the S. Comm. On Commerce, Science, and Transp., 102d Cong. 68 (1991) (Appendix, Why the Legislation Is So Important) (Attached as Exhibit B).

In keeping with this purpose, the TCPA's "technical and procedural standards" require that those who transmit prerecorded messages through the telephone system state clearly "the identity of the business, individual, or other entity initiating the call" and "the telephone number or address of such business, other entity, or individual."  47 U.S.C. § 227(d)(3)(A)(i)-(ii).  The Federal Communications Commission ("FCC") has adopted regulations implementing these disclosure provisions, which require that prerecorded messages provide the name of the business, individual or entity "responsible for initiating the call."  See 47 C.F.R. § 64.1200(b)(1).  In addition, the prerecorded message must include the telephone number of the business, individual, or entity initiating the call, rather than that of the autodialer or prerecorded message player that placed the call.  Id. § 64.1200(b)(2).

A principal motivation for these two disclosure requirements was Congress's concern about the particular effect of widespread anonymous, automated messages on the privacy of residential telephone subscribers.  By using prerecorded messages, unidentified callers could broadcast tens of thousands of messages into subscribers' homes, while recipients would have no means of contacting senders to request that the calls stop.  With advances in technology, these automated dialing systems have become more sophisticated and cost-effective at disseminating vast numbers of prerecorded messages to a widening array of consumers, resulting in growing consumer frustration and the FCC receiving tens of thousands of complaints each year from telephone subscribers about artificial and prerecorded messages.  See Declaration of Gregory

Elin at ¶ 5 ("Elin Decl.") (Attached as Exhibit C).  From May 2010 to December 2010 alone, the

FCC received approximately 48,000 complaints about prerecorded messages.  Id. at ¶ 6.  Of

these complaints, approximately 22,000, or slightly more than 45% of the complaints did not

contain sufficient information to identify the caller, id., and, thus, many of them could not be

considered for FCC enforcement action, see Declaration of Richard A. Hindman at ¶¶ 7-8

("Hindman Decl.") (Attached as Exhibit D).  Many of the consumer comments received by the

FCC have specifically cited the caller's lack of identifying information, i.e., the name of the

business and phone number, as being particularly aggravating for the recipient.[1]  Elin Decl. at ¶

7.

An additional concern brought to Congress's attention as it considered enactment of the

TCPA was the evasion of state and federal laws aimed at curtailing abuses associated with the

use of automated dialers and prerecorded telephone messages.  Witnesses before Congress

testified that the disclosure requirements of the Act "make it much easier to identify and begin

enforcement actions against organizations that violate either state or federal law with regard to

ADAD's [Automatic Dialing and Announcing Devices]."[2]  Thus, the name identification

---

[1]  For example, one complainant pointed out: "[t]hese number call more than once a day with a 'important message,' interupting [sic] our business daily. You cannot connect with an operator or any live person, press #1 and it goes to another recording with someone in a boiler room. This is getting very aggravating and is using precious time that could be spent otherwise." (Complaint 10-T00563121-1) (June 14, 2010).  Another telephone subscriber stated: "the prerecorded message was incomplete.  I have received many calls from this number other than the two I listed above but the others have dropped off the caller ID.  . . . I do not have a phone so that I can recieve [sic] calls that I cannot respond to.  I despise prerecorded phone calls.  It is impossible to accept or decline." (Complaint 10-T00573028-1) (July 12, 2010).  Elin Decl. at ¶ 7.

[2]  The Automated Telephone Consumer Protect Act of 1991; S. 1410 The Telephone Advertising Consumer Protection Act; and S. 857, Equal Billing for Long Distance Charges, Hearing on S. 1462 Before the Subcomm. On Communications of the S. Comm. on Commerce, Science and Transportation, 102d Cong. 11-12 (1991) (statement of Steven W. Hamm, Administrator, South Carolina Dept. of Consumer Affairs).  See Plaintiff's Exhibit A (ECF No. 18-1).

requirement and the telephone number disclosure were designed to assist regulators in enforcing TCPA requirements established to protect public health and safety. For example, the TCPA prohibits the use of automatic telephone dialing systems or artificial or prerecorded messages to place calls to emergency telephone lines, or to patient telephones in a hospital, see 47 U.S.C. § 227(b)(1)(A). The improper use of automated dialers poses the threat of tying up an emergency number or a hospital's phone system, and the absence of identifying information makes it difficult for regulators to pinpoint the source of these calls.[3] In addition, the FCC routinely receives complaints from telephone subscribers about prerecorded calls to their homes in the middle of the night, despite regulations prohibiting all telephone solicitations to residential subscribers before 8 a.m. or after 9 p.m.[4] 47 C.F.R. § 64.1200(c)(1). Thus, the FCC depends on identifying information about the parties who initiate artificial or prerecorded telephone messages in order to locate and take enforcement action against callers who flout these and other federal regulations of such calls intended to protect public safety, health, and welfare.[5] See Elin Decl. at ¶ 9; Hindman Decl. at ¶¶ 4, 7, 8.

---

[3] Consumers may report this type of violation on the FCC's website. See Form 1088F – Emergency Telephone; Patient Telephone in Hospital, Nursing Home, or Elderly Care Facility Complaint, available at http://www.fcc.gov/cgb/consumerfacts/1088F-R.pdf. The FCC is then able to respond to consumer complaints through the identification and telephone information provided. See, e.g., Elin Decl. at ¶ 8 (Complaint 10-T00561150-1) (June 9, 2010) (recounting a prerecorded message tying up the only phone line to a medical office and the consumer's attempt to contact the responsible party).

[4] In order to respond to complaints about prerecorded messages sent outside the permissible time frame, the FCC needs information about the initiating party. See Elin Decl. at ¶ 8 (Complaint 10-T00549724-1) (May 11, 2010) (describing a precorded message sent after midnight, leading subscriber to believe there might be an emergency), (Complaint 10-T00613866-1) (October 25, 2010) (complaining about prerecorded message sent between midnight and 1:30am from former Supreme Court Justice Sandra Day O'Connor regarding judicial elections); see also Hindman Decl. at ¶ 8 (describing how many complaints could not be considered for FCC enforcement action because businesses fail to disclose their company name and/or telephone number).

Finally, in order to ensure that these provisions have their intended effect, the TCPA provides for civil enforcement actions to be taken by state attorneys general against persons who violate the TCPA. 47 U.S.C. § 227(f)(1). The state attorneys general may obtain injunctive or monetary relief for violations of the Act, including statutory damages of $500 per violation. Id. Federal district courts have exclusive jurisdiction over such enforcement actions by the states. Id. § 227(f)(2). Statutory damages may be trebled if the violator is found to have acted intentionally or willfully. Id.

## II. Factual and Procedural Background

According to the Complaint, Universal Elections is a Maryland limited liability company that offers services to candidates for public office; Julius Henson is the owner of Universal Elections; and Rhonda Russell is an employee of Universal Elections. Compl. ¶¶ 6, 8-9 (ECF No. 1). Plaintiff State of Maryland, Office of Attorney General, alleges that Defendants initiated in excess of 112,000 prerecorded telephone messages to Maryland residents on Election Day, November 2, 2010. Id. ¶ 1. According to the Complaint, Defendants broadcasted the following prerecorded voice message:

> Hello. I'm calling to let everyone know that Governor O'Malley and President Obama have been successful. Our goals have been met. The polls were correct and we took it back. We're okay. Relax. Everything is fine. The only thing left is to watch it on TV tonight. Congratulations and thank you.

Id. ¶ 14. Plaintiff alleges that the prerecorded message violate the technical and procedural standards of 47 U.S.C. § 227(d)(3)(A) by failing to state the identity and phone number of the person responsible for initiating the call. Id. ¶¶ 17, 18.

---

[5] See, e.g., 47 U.S.C. § 227(b)(1)(B) (forbidding the delivery of non-exempted artificial or prerecorded messages to residential phone lines without the express consent of the called party); id., § 227(d)(3)(B) (requiring a system that sends prerecorded messages to automatically release the called party's line within five seconds); 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitors from calling persons listed on the national do-not-call registry of persons who do not wish to receive telephone solicitations).

In their initial motion to dismiss, Defendants did not raise a First Amendment defense. In a subsequent Supplemental Motion to Dismiss, Defendants argued that the TCPA's technical and procedural standards should be strictly scrutinized and that the First Amendment protects the political-type automated messages they had broadcast. Def. Mem. in Supp. of Supplemental Mot. to Dismiss at 4-5 ("Def. Mem.") (ECF No. 17). Maryland has filed an Opposition to Defendants' Supplemental Motion to Dismiss defending the constitutionality of 47 U.S.C. § 227(d)(3)(A). Pl's Opp. To Supplemental Mot. To Dismiss at 4-14 ("Pl's Opp.") (ECF No. 18).

## ARGUMENT

I.    **THE TCPA'S TWO DISCLOSURE REQUIREMENTS ARE SUBJECT TO INTERMEDIATE FIRST AMENDMENT SCRUTINY BECAUSE THEY ARE CONTENT NEUTRAL REGULATIONS OF ONE-WAY COMMUNICATIONS INTO THE HOME**

As an initial matter, this Court should apply intermediate scrutiny in this case because the TCPA's disclosure requirements are content-neutral, i.e., they cover all calls that contain a prerecorded message to residences, regardless of the message conveyed. Compare Turner, 512 U.S. at 652 (explaining that the contested regulatory requirements were content-neutral because they were "not designed to favor or disadvantage speech of any particular content"). Intermediate scrutiny requires the court to uphold the law if it serves a significant government interest and is narrowly tailored to serve that interest. See Frisby v. Schultz, 487 U.S. 474, 482 (1988) (reviewing content-neutral ordinance to see whether it is "narrowly tailored to serve a significant government interest" and "leave[s] open ample alternative channels of communication.") (internal quotations and citations omitted). Whereas content-based regulations are subject to more exacting scrutiny because of their favoritism or hostility toward certain messages or points of view, content-neutral regulations are subject to intermediate

scrutiny, because they pose less risk of excising certain ideas from the public dialogue.  Turner, 512 U.S. at 642, 652.

Defendants are wrong to assume that strict scrutiny applies to the TCPA's content-neutral regulations just because their speech in this instance happened to be political.[6]  To the contrary, the Supreme Court has consistently declined to apply strict scrutiny to content-neutral laws simply because the speech to which they applied in particular cases was political in nature.  For example, in Members of the City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789 (1984), a group supporting a candidate for election to the Los Angeles City Council challenged the constitutionality of an ordinance that prohibited the posting of signs on public property  "as applied to their posting of political campaign signs on . . . utility poles."  Id. at 796, 802-03. Notwithstanding the political nature of the group's expression, the Court applied intermediate scrutiny and upheld the City's ordinance as a content-neutral prohibition that was narrowly tailored to promote a substantial government interest in eliminating visual blight.  Id. at 803-10, 816-17.  The Court did likewise in San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 535-37 (1987) (applying intermediate scrutiny under circumstances where content-neutral statute prohibiting unauthorized use of "Olympic" mark allegedly "suppress[ed] political speech"), and Clark v. Community for Creative Non-Violence, 468 U.S. 288, 296-97 (1984) (intermediate scrutiny applied to ban on camping in city park, notwithstanding political message demonstrators wished to send by sleeping overnight).

---

[6] Defendants cite McIntyre v. Ohio Elect. Comm'n, 514 U.S. 334 (1995) for the proposition that "exacting scrutiny" should be employed when a regulation affects political speech, see Def. Br. at 3, though Defendants do little to explain how or why McIntyre's holding is applicable to content-neutral regulation of prerecorded messages transmitted into people's homes through automated systems.  In McIntyre, the Supreme Court invalidated an Ohio statute addressing the distribution of handbills in public.  514 U.S. at 338 n.3.  The law in question also defined the covered category of documents by the political content of the speaker's message.  Id. at 345-47. By contrast, in this case, the regulation is content-neutral, i.e., it includes all prerecorded messages sent to consumers; moreover, it addresses the receipt of these messages in the privacy of consumers' homes.

Because the statute here applies not just to political calls, but to any and all calls that employ artificial or prerecorded messages, it is not focused on speech of a particular content, but rather a specific medium, and should be reviewed under intermediate scrutiny. Accordingly, courts that have examined similar challenges to the content-neutral regulation of automated dialing systems have applied intermediate scrutiny. See Van Bergen v. Minn., 59 F.3d 1541, 1550-51, 1553-54 (8th Cir. 1995) (upholding state automated dialing systems statute similar to the TCPA as a content-neutral time, place, or manner restriction against challenge by political candidate seeking to use prerecorded telephone messages to provide campaign information to voters); Moser v. FCC, 46 F.3d 970, 973 (9th Cir. 1995) (holding that because the TCPA does not distinguish between commercial and noncommercial speech, "the statute should be analyzed as a content-neutral time, place, and manner restriction").

In addition, any determination of the proper level of scrutiny to apply to the TCPA's disclosure requirements must take into account the "special characteristics" of automated artificial and prerecorded telephone calls and their regulation. See Turner, 512 U.S at 660-61. As the Supreme Court explained in Turner, "not every interference with speech triggers the same degree of scrutiny under the First Amendment." Id. at 637. Rather, for purposes of determining the appropriate level of scrutiny, each medium of expression "must be assessed for First Amendment purposes by standards suited to it" in light of the "problems" it "may present." Id. at 657 (quoting Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 557 (1975)).

For example, individuals who publicly distribute leaflets exercise their rights by handing written material to passersby who may reject or accept it and be on their way without further delay or annoyance. See Taxpayers for Vincent, 466 U.S. at 809-10; see also Hill v. Colorado, 530 U.S. 703, 727-28 (2000) ("in all leafletting situations, pedestrians continue to be free to decline the tender"). If speakers who wish to convey messages or information by telephone use

live operators, or at the very least provide basic contact information in their prerecorded messages, then recipients have a means of communicating to the responsible parties -- in a fashion that at least resembles the two-way communication that the telephone is intended to facilitate.

By contrast, when speakers broadcast their messages through the use of autodialed, prerecorded telephone calls without providing the names or numbers of persons that residents can contact to request an end to further calls, these speakers' exploitation of technology in effect cuts off, as stated in <u>Turner</u>, "a critical pathway of communication," 512 U.S. at 657, the reciprocal communication that telephone subscribers have every reason to expect when they receive a call, and without which they have no means of safeguarding the peace and quiet of their homes from future disturbances. The First Amendment should not be interpreted to "disable the government from taking steps to ensure" that subscribers can protect the tranquility of their households from such intrusions. <u>See</u> <u>id.</u>[7] Thus, this content-neutral law regulating a one-way means of communication into the home is subject to intermediate scrutiny and should be upheld if it serves a significant government interest and is narrowly tailored to serve that interest. <u>Id.</u> at 652.

---

[7] The type of regulation at issue in this case – requiring disclosure of certain information but not prohibiting use of the medium of communication altogether – impacts the level of scrutiny to be applied as well. For example, courts have used tests similar to the intermediate scrutiny standard to uphold laws that require the disclosure of names of persons in whose interests lobbyists are acting, <u>United States v. Harriss</u>, 347 U.S. 612, 625 (1954) (lobbying disclosure law is constitutional if it serves an important government purpose and does not affect materially more or less speech than is necessary to serve its important purposes), and to uphold laws that require charitable fundraising telemarketers to make certain disclosures when calling, <u>see</u> <u>Nat'l Fed'n of the Blind v. FTC</u>, 420 F.3d 331, 338 (4th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 2058 (2006) (upholding constitutionality of Federal Trade Commission regulation because "it serves a sufficiently strong, subordinating interest that the government is entitled to protect and . . . is narrowly drawn to serve the interest without unnecessarily interfering with First Amendment freedoms") (internal quotation and citation omitted).

**II.    THE TCPA'S DISCLOSURE REQUIREMENTS PROMOTE MULTIPLE, SUBSTANTIAL GOVERNMENT INTERESTS**

**A.    The TCPA's Disclosure Requirements Promote a Substantial Governmental Interest in Residential Privacy**

The TCPA's disclosure requirements advance a substantial governmental interest in residential privacy.  As reflected in the legislative history, Congress enacted the TCPA's disclosure requirements to address the increasingly widespread nuisance of unidentified prerecorded messages to telephone subscribers in their homes.  In <u>Hill</u> the Supreme Court affirmed that no speaker has a right to press even "good" ideas on unwilling listeners, and that the government may protect the interests of such listeners "in situations where the degree of captivity makes it impractical for the unwilling listener to avoid exposure."  530 U.S. at 716-18 (citations omitted).  Those interests "ha[ve] special force in the privacy of the home," <u>id.</u> at 717, and it is well established that the government's corresponding "interest in protecting the well-being, tranquility, and privacy of the home" is "of the highest order."  <u>Frisby</u>, 487 U.S. at 484 (internal quotations and citations omitted).  In service of these interests the government may legislate to protect the ability of citizens, within their own walls, to avoid intrusions, <u>id.</u> at 484-85, and thus, as the court acknowledged in <u>Mainstream Marketing Servs., Inc. v. FTC</u>, protecting individuals in their homes from the disruptions of unwanted telephone solicitations is an "undisputedly substantial governmental interest[ ]."  358 F.3d 1228, 1237-38 (10th Cir. 2004).

Moreover, the anonymous nature of these calls leave residents feeling frustrated and abused in part because without the necessary contact information, telephone subscribers have no means of reaching the responsible parties to request that they not receive these calls in the future. The courts have recognized the "abusive and invasive" nature of these calls.  <u>Mainstream Marketing</u>, 358 F.3d at 1244-45 (upholding the national do-not-call registry against First Amendment attack); <u>Bland v. Fessler</u>, 88 F.3d 729, 732-33 (9th Cir. 1996) ("compared to door-

to-door solicitors, the annoyance and disruption of ADADs [automatic dialing and announcing devices] is of a different order of magnitude. … [W]hile door-to-door solicitation involves a conversation between two people, ADADs involve a one-way onslaught of information.").

The TCPA's disclosure requirements address these particular problems with prerecorded messages by providing residents information they expect and desire about who is calling them, and the information they require to contact the parties who place these calls to request that they stop doing so.  First, by hearing the identity of the initiating party, the recipient of the message can choose whether or not to immediately terminate the call thereby "protect[ing] their private time."  Nat'l Fed'n of the Blind, 420 F.3d at 343.  Second, by receiving the telephone number of the party responsible for the call, the telephone subscriber then has the ability to contact that party and either ask for additional information or ask that he or she not receive future calls.

### B.    The TCPA's Disclosure Requirements Further a Substantial Government Interest in Effective Enforcement of Other Important State and Federal Laws

The TCPA's disclosure requirements also further a substantial governmental interest in the effective enforcement of other state and federal laws that regulate automated artificial and prerecorded telephone calls to protect both residential privacy and public health and safety.  The government's interest in preventing evasion and detecting violations of the law is a manifestly important one, see, e.g., Caplin & Drysdale Chartered v. United States, 491 U.S. 617, 629-31 (1989) (asset forfeiture statute promotes substantial government interest in promoting criminal law enforcement); SKF USA, Inc. v. U.S. Customs and Border Protection, 2009 WL 398263 at *8-12 (Fed. Cir. Feb. 19, 2009) (finding substantial government interest in promoting enforcement of U.S. antidumping laws), and the concomitant importance of disclosure requirements as "essential means of gathering the data necessary to detect violations" is equally well recognized.  Buckley v. Valeo, 424 U.S. 1, 67-68 (1976).   Relying in part on Buckley, the

Supreme Court has also cited the anti-circumvention purpose, i.e., the government's interest in facilitating the enforcement of other substantive regulations and reducing opportunities for evasion of the law, as a substantial government interest, see, e.g., McConnell v. FEC, 540 U.S. 93, 143-44, 171-73, 196 (2003), overruled on other grounds by Citizens United v. FEC, 130 S.Ct. 876 (2010).

In this case, Congress enacted the TCPA's disclosure requirements to facilitate the enforcement of federal laws and regulations that bar, for example, autodialed, artificial, or prerecorded calls to emergency telephone lines and health care facilities, 47 U.S.C. § 227(b)(1)(A); forbid non-exempted artificial or prerecorded calls to residential phone lines without consent of the called party, id., § 227(b)(1)(B); and prohibit telephone solicitors from making artificial or prerecorded calls either before 8:00 a.m. or after 9:00 p.m., 47 C.F.R. § 64.1200(c)(1).   The TCPA's requirements also facilitate disclosure of entities that evade even more rigorous restrictions the states have placed on telemarketers' use (and abuse) of automatic telephone dialing systems, e.g., Ind. Code § 24-5-14-5 (prohibiting the use of automatic dialing devices except in specified circumstances); N.D. Cent. Code § 51-28-02 (same).  See TCPA, § 2 (7) (federal law is needed to control residential telemarketing practices because telemarketers can evade state regulation through interstate operations); H.R. Rep. No. 102-317, at 25 (1991).  The TCPA's disclosure requirements promote governmental interests in the enforcement of such laws by making it easier to identify violators and commence enforcement actions.  Hindman Decl. at ¶¶ 7-8.[8]

---

[8] This interest in supporting enforcement actions extends to identifying and curtailing fraudulent activities.  Contrary to Defendants' assertion regarding fraud prevention measures, see Def. Mem. at 4, courts have repeatedly held that there is a substantial government interest in curtailing fraudulent activity that can be addressed specifically through narrowly tailored identification and/or disclosure requirements.  See Am. Target Advert., Inc. v. Giania, 199 F.3d 1241, 1247-48 (10th Cir. 2000) (registration and disclosure requirements advance substantial public interests in preventing fraud and misrepresentation); Public Citizen, Inc. v. Pinellas Cty.,

## C.     The TCPA's Disclosure Requirements Promote an Informed Citizenry

The TCPA's disclosure requirements also help recipients of prerecorded messages evaluate the message that is being communicated through the use of automated dialing systems. In McConnell, 540 U.S. at 196-97, the Supreme Court held that pre-existing disclosure requirements governing election-related speech could validly be applied to "electioneering communications" as defined by federal law.  The Court went on to quote (with evident approval) the district court's conclusion in the case, namely that disclosure would further the "First Amendment interest of individual citizens seeking to make informed choices in the political marketplace." Id. at 197.  Likewise, in Citizens United, the Court reaffirmed the constitutionality of those disclosure requirements, see 130 S.Ct. at 913-16, even as it overturned other aspects of the federal campaign-finance regime.  Specifically, the Court concluded that disclosure requirements are subject to less demanding constitutional scrutiny than outright prohibitions on political speech.  Id. at 914.  As explained above, see supra at 7-10, because Section 227(d)(3)(A) is content-neutral and applies to all prerecorded messages regardless of the nature of a particular caller's message, the political nature of the calls is irrelevant to the constitutional analysis.  But even if the Court were to consider the content of the Defendants' prerecorded message, the government has a well-recognized interest in facilitating informed evaluation of political advocacy, an interest which has long served as sufficient justification for disclosure requirements.  See, e.g., Buckley, 424 U.S. at 66-67 ("disclosure provides the electorate with information as to where political campaign money comes from . . . in order to aid the voters in evaluating those who seek federal office") (internal quotation omitted).

---

321 F. Supp. 2d 1275, 1297 (M.D. Fla. 2004) (protecting the public from deception, fraud, and misrepresentation represents "a sufficiently substantial interest to justify a narrowly tailored regulation.") (quoting Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781, 792 (1988)).

14

### III. THE TCPA'S DISCLOSURE REQUIREMENTS ARE NARROWLY TAILORED TO ACHIEVE ITS PURPOSES

The disclosure requirements of the TCPA meet the test of narrow tailoring, because they do not burden substantially more speech than is necessary to achieve the government's objectives. Congress received evidence (and found) that the proliferation of artificial and prerecorded telephone calls constitutes a nuisance to residential telephone subscribers, and an invasion of their privacy. The evidence showed, too, that the failure of the parties making these calls to identify themselves is particularly aggravating and unsettling to recipients. In addition, as Congress learned, the failure to include the identifying information that the TCPA now requires can impair the enforcement of state and federal laws meant to control other abuses of artificial and prerecorded telephone calls. To remedy these problems, "created by the medium of expression itself," Congress did no more than target "the exact source of the evil[s] it sought to remedy." Taxpayers for Vincent, 466 U.S. at 808, 810. It required artificial and prerecorded telephone calls, and only those calls, to include a statement of the caller's identity which subscribers expect, as well as contact information with which subscribers can request an end to further calls. This same information is also needed by state and federal authorities to enforce regulation of these calls. Thus, the TCPA's requirements "respond[ ] precisely to the substantive problem[s] which legitimately concern[ed]" the Congress, id., and curtail no more speech than is necessary to accomplish their purpose. Tellingly, Defendants suggest no narrower category of calls to which the TCPA's disclosure requirements might be applied yet still accomplish their important purposes. For all the foregoing reasons, the TCPA's disclosure requirements withstand applicable First Amendment scrutiny.

## IV. THE TCPA'S DISCLOSURE REQUIREMENTS ALSO WITHSTAND STRICT SCRUTINY

Even if the Court were to apply strict scrutiny, the TCPA's technical and procedural requirements would survive. Pursuant to this standard, the challenged provisions should be upheld if they (i) serve a compelling government interest and (ii) are narrowly tailored to serve that interest, which in the context of strict scrutiny means that they must be the least restrictive means for furthering that purpose. See Sable Comm'ns of Cal., Inc. v. FCC, 492 U.S. 115, 126 (1989).

As discussed above, the TCPA's disclosure requirements are narrowly tailored to several independent governmental interests. First, they promote the tranquility and privacy of the home by protecting the well-being of residents who find receipt of anonymous phone calls unnerving, and by providing residents who do not welcome "robo-calls" calls with a ready means of contacting the persons responsible for placing them and requesting an end to further harassment. The Supreme Court has described the government's interest in promoting residential privacy and tranquility as "certainly of the highest order in a free and civilized society," Frisby, 487 U.S. at 484, and as having "special force." Hill, 530 U.S. at 717. The TCPA's disclosure requirements are precisely tailored to this compelling governmental interest, because they target the exact source of the threat to residential tranquility that Congress identified - anonymous artificial or prerecorded telephone calls that disturb the peace and quiet of the home but that occupants can do nothing to prevent.

Second, these requirements also serve the government's interest in facilitating enforcement of other state and federal laws that regulate automated or prerecorded telephone calls to protect the rights of residents, and public health and safety. In various contexts, courts have acknowledged the superseding importance of similar disclosure requirements as means of facilitating the detection and punishment of unlawful conduct, even where disclosure is required

of those who stand behind some quantum of political speech.  See <u>McConnell</u>, 540 U.S. at 196-97 (upholding disclosure requirements applied to sponsors of "electioneering communications"); <u>Buckley</u>, 424 U.S. at 83-84 (sustaining reporting requirements for independent campaign-related expenditures); <u>Minn. Citizens Concerned for Life v. Kelley</u>, 427 F.3d 1106, 1111-12 (8th Cir. 2005) (financial disclosures for lobbyists); <u>Nat'l Ass'n of Mfrs. v. Taylor</u>, 549 F. Supp. 2d 33, 59-60 (D.D.C. 2008) (reporting requirements for organizations contributing to lobbying activities). The TCPA's disclosure requirements are precisely tailored to this interest as well, requiring minimal disclosures only by those individuals and entities that place artificial or prerecorded telephone calls, so that state and federal authorities might readily ascertain the identities of those who persist in the various abuses of this medium that Congress and the States have rightly condemned as unlawful.

Finally, the Supreme Court has found that the government has a significant interest in promoting an informed electorate.  The Supreme Court has recently upheld the disclaimer and disclosure provisions of campaign finance laws, <u>see</u> <u>Citizens United</u>, 130 S.Ct. at 915-916 ("[D]isclosure permits citizens and shareholders . . .  To make informed decisions and give proper weight to different speakers and messages."), severely undermining Defendants' blanket assertion that Congress may not regulate where "political activity" is "at issue" or it "effect[s] political speech."  Def. Mem. at 4.  In this case, Defendants were required to identify themselves and to provide the necessary telephone phone number as a means of allowing recipients to evaluate their message and make an informed decision, reflecting a compelling government interest that has been recognized by the Supreme Court in the context of political campaign finance regulation.

## CONCLUSION

For the reasons set forth above, the Court should deny the First Amendment challenge raised in Defendants' Supplemental Motion to Dismiss.  The TCPA's disclosure requirements are narrowly tailored to substantial government interests in residential privacy and effective law enforcement, and so withstand First Amendment scrutiny.


Respectfully submitted,


*OF COUNSEL*:
SUSAN LAUNER
Deputy Associate General Counsel –
Trial and Enforcement
JACOB LEWIS
Associate General Counsel
ELLEN MILES
Attorney Advisor
Office of the General Counsel
Federal Communications Commission
445 12th Street S.W.
Washington, D.C. 20554

TONY WEST
Assistant Attorney General

ROD J. ROSENSTEIN
United States Attorney, District of Maryland

JOHN R. GRIFFITHS
Assistant Director,
Federal Programs Branch


  /s/ *Bradley H. Cohen*
BRADLEY H. COHEN
U.S. Department of Justice, Civil Division

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
20 Massachusetts Ave., N.W. Room 7338
Washington, D.C. 20001

Telephone:  (202) 305-9855
Fax:  (202) 318-0486
Email:  bradley.cohen@usdoj.gov

**ATTORNEYS FOR UNITED STATES**

## CERTIFICATE OF SERVICE

I certify that on April 15, 2011, I electronically transmitted the foregoing document to the

Clerk of the Court using the Electronic Case Filing ("ECF") system for filing and transmittal of a

Notice of Electronic Filing to counsel of record. In addition, service was made by first class U.S.

mail to counsel for Plaintiff and Defendants at the following addresses:

Attorneys for Plaintiff
William D Gruhn
Philip D. Ziperman
State of Maryland Office of the Attorney General
200 Saint Paul Pl 16th Fl
Baltimore, MD 21202-2021
(410) 576-6300

Attorney for Defendants
Edward Smith, Jr.
Law Office of Edward Smith Jr
2225 Saint Paul St.
Baltimore, MD 21218
(410) 366-0494


        /s/   *Bradley H. Cohen*

BRADLEY H. COHEN, D.C. Bar 495145
Trial Attorney
Federal Programs Branch
U.S. Department of Justice
20 Massachusetts Ave., N.W. Room 7338
Washington, D.C. 20001
(202) 305-9855
Fax (202) 318-0486
bradley.cohen@usdoj.gov