FILED: July 29, 2013

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 12-1791
(1:10-cv-03183-CCB)

STATE OF MARYLAND, Office of the Attorney General

Plaintiff - Appellee

UNITED STATES OF AMERICA

Intervenor/Plaintiff - Appellee

v.

UNIVERSAL ELECTIONS, INCORPORATED; JULIUS HENSON

Defendants - Appellants

and

RHONDA RUSSELL

Defendant

## J U D G M E N T

In accordance with the decision of this court, the judgment of the district court is affirmed.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ PATRICIA S. CONNOR, CLERK

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

──────────────

No. 12-1791

──────────────

STATE OF MARYLAND, Office of the Attorney General,

                Plaintiff - Appellee,

UNITED STATES OF AMERICA,

                Intervenor/Plaintiff - Appellee,

        v.

UNIVERSAL ELECTIONS, INCORPORATED; JULIUS HENSON,

                Defendants - Appellants,

        and

RHONDA RUSSELL,

                Defendant.

──────────────

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Catherine C. Blake, District Judge.
(1:10-cv-03183-CCB)

──────────────

Argued:  May 15, 2013                    Decided:  July 29, 2013

──────────────

Before KING and AGEE, Circuit Judges, and David C. NORTON,
United States District Judge for the District of South Carolina,
sitting by designation.

──────────────

Affirmed by unpublished per curiam opinion.

──────────────

**ARGUED**: Edward Smith, Jr., LAW OFFICE OF EDWARD SMITH, JR., Baltimore, Maryland, for Appellants. William D. Gruhn, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland; Mark R. Freeman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF**: Douglas F. Gansler, Attorney General, Philip D. Ziperman, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee State of Maryland. Rod J. Rosenstein, United States Attorney, Stuart F. Delery, Acting Assistant Attorney General, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Political consultant Julius Henson and his company, Universal Elections, Inc., appeal the district court's grant of summary judgment to the State of Maryland ("the State") on its claim that Henson and Universal Elections violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (2010) ("the TCPA" or "the Act"). For the reasons set forth below, we affirm the district court's decision in all respects.

I.

Though the district court ably summarized the facts in its summary judgment order, we briefly restate them here. Three months before the 2010 Maryland gubernatorial election, the political campaign of Republican candidate Robert L. Ehrlich, Jr. hired Henson and Universal Elections to assist with the campaign's efforts. J.A. 487.[1]

On Election Day, November 2, 2010, Henson and Universal Elections employee Rhonda Russell composed and prepared a pre-recorded telephone call, also known as a "robocall," as part of their work for the Ehrlich campaign. Id. That pre-recorded telephone call ("the election night robocall") stated, in its entirety:

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

> Hello.  I'm calling to let everyone know that Governor
> O'Malley and President Obama have been successful.
> Our goals have been met.  The polls were correct and
> we took it back.  We're okay.  Relax.  Everything is
> fine.  The only thing left is to watch it on TV
> tonight.  Congratulations and thank you.

J.A. 487-88.  The election night robocall neither identified the

Ehrlich campaign as the sponsor of the message nor included the

campaign's phone number.  J.A. 488.

Henson dictated the contents of the election night robocall

to Russell and directed Russell to omit an authority line that

would have identified the Ehrlich campaign as the source of the

message.  J.A. 488.  Russell recorded the message and uploaded

it, along with two lists containing the phone numbers for

Maryland Democratic voters, to the website of a Pennsylvania-

based automatic dialing service called Robodial.org, LLC.  Id.

After sending test messages to Henson and to Ehrlich staffers,

Russell authorized Robodial.org to deliver the election night

robocall to the phone numbers included on the uploaded lists.

Id.  Robodial.org sent the election night robocall to more than

112,000 Maryland Democratic voters through an account maintained

by Universal Elections.  J.A. 487-88.

Of the roughly 112,000 calls that were placed, 69,497

voters received the entire message.  J.A. 488.  Another 16,976

recipients received part of the message.  Id.  The remaining

calls failed or went unanswered.  Id.

4

On November 10, 2010, the State filed a civil lawsuit against Henson, Russell, and Universal Elections for violations of the TCPA. J.A. 10. Specifically, the State alleged that the defendants had violated the Act by failing to identify the Ehrlich campaign as the sponsor of the election night robocall. J.A. 14.

On December 15, 2010, Henson, Russell, and Universal Elections moved to dismiss the State's complaint. J.A. 16; Supp. App. 1-15. In a supplemental motion to dismiss filed on December 28, 2010, they argued that the TCPA and its implementing regulations were unconstitutional. Supp. App. 45-51. After defendants asserted a First Amendment defense in their supplemental motion to dismiss, the United States intervened in this case to defend the constitutionality of the TCPA. J.A. 43-45. On May 25, 2011, the district court denied defendants' motion to dismiss, holding that the TCPA is a content-neutral speech regulation that survives intermediate constitutional scrutiny, and finding defendants' other arguments unavailing. J.A. 96-108.

On May 11, 2011, shortly before the district court denied defendants' motion to dismiss, Henson, Russell, and Universal Elections moved to stay the proceedings pending the resolution of related state criminal investigations. J.A. 92-93. The district court determined that the motion to stay would not

5

affect its ruling on the motion to dismiss, and addressed the motion to stay after denying the motion to dismiss. J.A. 95, 148. On July 7, 2011, the court denied the motion to stay, noting that:

> Other than unfounded attacks on the motives of the Attorney General, the defendants have not explained why a blanket stay of this action is warranted by the existence of a partially parallel criminal indictment brought by the State Prosecutor. . . . The motion to stay as filed is overbroad and is <u>Denied</u>.

J.A. 148 (emphasis and capitalization in original).

On March 15, 2012, the State moved for summary judgment. Supp. App. 52-75. Defendants did not oppose the State's motion for summary judgment, and the district court granted the unopposed motion on May 29, 2012. J.A. 487-94. The court explained that the record unambiguously supported a finding that defendants had violated the TCPA:

> Universal Elections, by and through both Russell and Henson, drafted and sent a message that failed to include the disclosure information required by [the TCPA]. As Russell's testimony makes clear, both she and Henson were directly and personally involved in the creation of the offending message. . . . [T]he documentary evidence in the record and the deposition testimony of Russell and Ehrlich staffers establish without any doubt that Henson discussed plans to suppress the votes of African-American Democrats, recorded the plan in the strategy memo sent to the Ehrlich campaign, and ultimately dictated and authorized the offending message. Thus, both Henson and Russell, in addition to Universal Elections, may be held jointly and severally liable for any damages this court may award under the TCPA.

J.A. 490. The district court entered judgment on behalf of the State in the amount of $10,000 against Russell, and in the amount of $1,000,000 against Henson and Universal Elections.

Henson and Universal Elections timely filed a notice of appeal on June 22, 2012. We have jurisdiction under 28 U.S.C. § 1291.

II.

We review de novo the constitutionality of a federal statute and its implementing regulations, United States v. Sun, 278 F.3d 302, 308-09 (4th Cir. 2002); the denial of a motion to dismiss, Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011); and the grant of an unopposed motion for summary judgment, Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment "to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977). As such, we review the denial of a motion to stay under an abuse-of-discretion standard. Id. at 297; Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 464 (4th Cir. 2005).

7

III.

Henson and Universal Elections raise four issues on appeal.[2] Appellants assert that the district court erred by: (1) finding that the TCPA is not unconstitutional when applied to political robocalls; (2) denying defendants' motion to dismiss; (3) denying defendants' motion to stay proceedings pending the resolution of a related state court criminal case; and (4) granting summary judgment in favor of the State.  We address these arguments in turn.

A.

With regard to the constitutionality of the TCPA, appellants appear to argue that § 227(d) "violates the First Amendment because it is a content-based burden on political speech" that cannot withstand strict scrutiny.  Appellants' Br. 12 n.6.  When evaluating whether a regulation violates the First Amendment, "the most exacting scrutiny" is applied to regulations "that suppress, disadvantage, or impose differential burdens upon speech because of its content."  Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 642 (1994).  "In contrast, regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny, because in most cases they pose a less substantial risk of excising certain

---

[2] Russell does not appeal the district court's ruling.

8

ideas or viewpoints from the public dialogue." <u>Id.</u> (citing <u>Clark v. Cmty. for Creative Non-Violence</u>, 468 U.S. 288, 293 (1984)). "[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." <u>Id.</u> at 643.

The TCPA and its implementing regulations require that automated, prerecorded messages identify the entity sponsoring the phone call and provide that entity's telephone number. 47 U.S.C. § 227(d)(1), (3)(A); 47 C.F.R. § 64.1200(b) (2008). This identity disclosure requirement applies regardless of the content of the message that is relayed to the recipient. § 227(d)'s requirements do not place any greater restriction on a particular group of people or form of speech, and do not burden appellants – or entities engaging in political speech – any more than any other person or group placing robocalls. The district court properly determined that the TCPA is a content-neutral law to which intermediate scrutiny must be applied.

A content-neutral law that regulates speech is valid if "it furthers an important or substantial governmental interest . . . [that] is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." <u>United States v. O'Brien</u>, 391 U.S. 367, 377 (1968). "To satisfy this standard, a regulation need not be the

9

least speech-restrictive means of advancing the Government's
interests." Turner, 512 U.S. at 662.  Instead, the regulation
simply cannot "burden substantially more speech than is
necessary to further the government's legitimate interests."
Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 799
(1989)).

There are at least three important government interests
furthered by the TCPA's identity disclosure provision:
protecting residential privacy; promoting disclosure to avoid
misleading recipients of recorded calls; and promoting effective
law enforcement.  J.A. 104-107.  The TCPA protects residential
privacy - a government interest articulated in the legislative
history of the Act - by enabling the recipient to contact the
caller to stop future calls.  See S. Rep. No. 102-178, at 1; 47
U.S.C. § 227(d).  Moreover, the Supreme Court has long
"recognized that '[p]reserving the sanctity of the home, the one
retreat to which men and women can repair to escape from the
tribulations of their daily pursuits, is surely an important
value.'"  Frisby v. Schultz, 487 U.S. 474, 484 (1988) (quoting
Carey v. Brown, 447 U.S. 455, 471 (1980)); see also Nat'l Fed'n
for the Blind v. F.T.C., 420 F.3d 331, 339-40 (4th Cir. 2005)
("Nat'l Fed'n for the Blind") (finding that residential privacy
is "a substantial government interest that the democratic
process is entitled to protect").  The Act is narrowly tailored

10

to protect this interest by requiring only that callers identify themselves and a phone number at which they can be reached. <u>Cf. Nat'l Fed'n for the Blind</u>, 420 F.3d at 342-43 (finding that caller identification provision of the Federal Trade Commission's Telemarketing Sales Rule is a narrowly tailored, minimal restriction that simply allows consumers to "pre-select whom they wish to speak to on a particular evening").

The Act also promotes disclosure to avoid misleading recipients of prerecorded calls. The TCPA's identity disclosure provision obliges callers to state the name of the entity responsible for the call. This disclosure allows the recipient to better evaluate the content and veracity of the message. <u>See Riley v. Nat'l Fed'n for the Blind of N.C.</u>, 487 U.S. 781, 792 (1988) ("The interest in protecting charities (and the public) from fraud is, of course, a sufficiently substantial interest to justify a narrowly tailored regulation."). The TCPA's requirement that robocall sponsors identify themselves is narrowly tailored to protect citizens from fraud. <u>Cf. Nat'l Fed'n for the Blind</u>, 420 F.3d at 342-43 (upholding as constitutional a government regulation requiring telefunders to transmit their name and phone number to caller ID services).

Finally, the TCPA's identity disclosure provision also promotes effective law enforcement by assisting the government in detecting violations. <u>See</u> J.A. 91 (affidavit of Federal

11

Communications Commission enforcement official stating that "the two identification requirements for prerecorded messages . . . play a central role in allowing called parties to accurately report the parties who are responsible for specific violations, thereby assisting the Commission in taking enforcement action after complaints are received"). Again, the Act's identification provision is narrowly tailored to accomplish the goal of assisting law enforcement; the provision places a minimal burden on callers to identify themselves and how they can be contacted.

The district court correctly identified these three important government interests, found that the Act is a content-neutral regulation that furthers important government interests unrelated to free expression, and held that the TCPA's restrictions do not burden substantially more speech than is necessary to protect those interests. Appellants have failed to present a comprehensible argument to the contrary. For these reasons, we affirm the district court's finding that the TCPA's identity disclosure provisions are constitutional.

B.

To argue that the district court improperly denied their motion to dismiss, appellants reiterate the same convoluted arguments made in their December 2011 motion to dismiss. Not

12

surprisingly, these arguments meet with the same amount of success that they received in the district court.

Appellants assert that the complaint should have been dismissed because it fails to allege that the election night robocall was received by any Maryland citizen. This argument misses the mark. The complaint alleges that "the prerecorded voice message . . . was broadcast to the phone numbers of more than 112,000 Maryland residents chosen by Defendants." Compl. ¶ 15 (emphasis added). This allegation sufficiently alleges that defendants placed the election night robocall to Maryland citizens and that Maryland citizens received the call. The TCPA does not require state attorneys general to identify particular phone call recipients by name.

Appellants next contend that Congress' failure to pass "the Robocall Privacy Act of 2006, 2007, and 2008" shows that Congress has chosen not to regulate political robocalls. Appellants' Br. 20-21. Appellants' argument is unavailing. The fact that Congress has not passed legislation that specifically addressed political robocalls does not lessen in any way the scope and applicability of the TCPA. The Act's plain language demonstrates that it applies to all prerecorded phone calls, including those with a political message. See 47 U.S.C. § 227(d)(3) (the restrictions of § 227(d) apply to "all artificial or prerecorded telephone messages").

13

By referring repeatedly to Maryland agency law, appellants also attempt to argue that Henson and Russell cannot be held liable under the TCPA. Appellants' Br. 21-22. However, Maryland's approach to the doctrine of respondeat superior does not affect the scope of liability contemplated by the TCPA. Additionally, the TCPA's language makes clear that individuals can be sued under the Act. § 227(d) prohibits "any person" from violating the authority identification requirements contained in the Act, and empowers state attorneys general to bring action against "any person" who violates the Act. See also Balt.-Wash. Tel. Co. v. Hot Leads Co., 584 F. Supp. 2d 736, 745 (D. Md. 2008) (finding that individuals could be held personally liable for TCPA violations); Texas v. Am. Blastfax, Inc., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) (same); Covington & Burling v. Int'l Mktg. & Research, Inc., No. 01-cv-4360, 2003 WL 21384825, at *6 (D.C. Super. Ct. Apr. 17, 2003) (same).

Appellants also contend that the election night robocall cannot violate the TCPA because it was a single phone call placed to multiple recipients, not multiple phone calls made to the same recipients over time. Appellants' Br. 22-23. Appellants cite no authority in support of this proposition, and the TCPA contains no requirement that multiple calls be made to the same person. Indeed, § 227(d)(1)(A) prohibits "any

14

telephone call" that fails to comply with the Act's technical and procedural standards.

Appellants assert that they cannot be liable under the TCPA because they did not actually place any of the offending phone calls.  Appellants' Br. 23.   Rather, they suggest that Robodial.org, the autodialing company that placed all the phone calls at appellants' direction, must bear the responsibility for violating the Act.  Id.  As with many of their other arguments, appellants cite no authority for the proposition that only the autodialer that places the improper calls can be held liable under the TCPA.  Such a narrow reading would undermine the purpose of the Act and would allow the actual violators to escape liability.   In addition, the language of the Act indicates that it is intended to apply to the individuals who use the autodialing systems that place calls, and not just to the autodialing services themselves.  See 47 U.S.C. § 227(d)(1) ("It shall be unlawful for any person . . . to make any telephone call using any automatic telephone dialing system[] that does not comply with the technical and procedural standards prescribed under this subsection . . . or to use any . . . automatic telephone dialing system in a manner that does not comply with the standards.").  Robodial.org's terms of use reinforce this interpretation of the Act, as those terms state

15

that the "[c]ustomer is responsible for compliance with the [TCPA]." J.A. 488.

Finally, appellants make a cursory argument that the complaint should have been dismissed because Robodial.org was not joined as a party under Federal Rule of Civil Procedure 19. Appellants' Br. 24.   Federal Rule of Civil Procedure 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

When a person "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

The State's failure to include Robodial.org as a defendant in this case did not affect the district court's ability to adjudicate the claims raised against Henson, Russell, and Universal Elections.   Robodial.org's absence from the case

16

neither impairs its ability to protect its interest nor leaves the existing parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

In summary, appellants have failed to demonstrate that their motion to dismiss should have been granted. Rather, the district court properly evaluated and denied defendants' motion to dismiss.

C.

Appellants next suggest that the district court erred by denying their motion to stay the proceedings pending resolution of partially parallel criminal proceedings. This argument also fails.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "Because of the frequency with which civil and regulatory laws overlap with criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of criminal proceedings." Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 530 (S.D. W. Va. 2005). Stays generally are not

granted before an indictment has issued.  <u>Id.</u> at 531 n.3 (citing

<u>Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld</u>

<u>Mech., Inc.</u>, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)); <u>State</u>

<u>Farm Mut. Auto. Ins. Co. v. Beckham-Easley</u>, No. 01-cv-5530, 2002

WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002) (quoting <u>Walsh</u>

<u>Sec., Inc. v. Cristo Prop. Mgmt., Ltd.</u>, 7 F. Supp. 2d 523, 527

(D.N.J. 1998)); <u>In re Par Pharm., Inc. Sec. Litig.</u>, 133 F.R.D.

12, 13 (S.D.N.Y. 1990).

The district court's denial of defendants' motion to stay

is in keeping with the bulk of judicial authority, which holds

that stays are generally not granted before indictments have

issued.  The court's decision to deny the motion to stay was

particularly appropriate where, as here, the motion was devoid

of any facts or legal argument.  The defendants' two-page motion

to stay the proceedings simply stated that they believed that at

least two grand juries had been convened for which Henson,

Russell, and Universal Elections were targets and that "[t]he

use of witnesses who are/may be indicted by government action

both at that federal and state level triggers substantial Fifth

Amendment issues."  J.A. 92-93.  The motion to stay did not

identify any particular Fifth Amendment conflict that had

arisen, or explain how the convening of two grand juries had

jeopardized the constitutionality of the pending civil

proceedings.  The district court wisely chose to delay ruling on

any Fifth Amendment issues until those issues had been properly identified and fully briefed. Denial of the motion to stay was therefore not an abuse of the court's discretion.

D.

Finally, appellants argue that the district court erred by granting summary judgment to the State. Defendants did not respond to the State's motion for summary judgment. Nevertheless, the district court thoroughly analyzed the motion, as it was obligated to do. Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010) ("[I]n considering a motion for summary judgment, the district court 'must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'") (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)) (emphasis in original).

Because appellants did not respond to the State's summary judgment motion, the following facts were uncontroverted: (1) Henson and Russell, as political consultants employed by the Ehrlich gubernatorial campaign, wrote and recorded the election night robocall; (2) the call did not disclose the name or phone number of the message's sponsor; (3) Henson directed Russell to omit from the message a line explaining who had authorized the message; (4) Russell – perhaps mistakenly – also omitted the phone number of the message's sponsor from the message; (5)

19

through an account maintained by Universal Elections, Russell uploaded the message, along with two lists of Maryland Democratic voters, to the website of automatic dialing system Robodial.org; (6) Russell then commenced the calls through Robodial.org; (7) the election night robocall was delivered to approximately 112,000 Democratic voters in Baltimore City and Prince George's County; (8) at least 69,497 call recipients received the entire recorded message contained in the election night robocall; and (9) at least 16,976 call recipients received part of the message. Supp. App. 56, 59-61.

These facts clearly establish that appellants created and distributed the election night robocall, which failed to identify either the message's sponsor or a phone number at which the sponsor could be reached. This is sufficient to establish appellants' liability under the TCPA, and the district court did not err in granting summary judgment in favor of the State.

IV.

For the foregoing reasons, we affirm the rulings of the district judge in all respects.

<u>AFFIRMED</u>

FILED: July 29, 2013

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No.  12-1791,        State of Maryland v. Universal Elections, Inc.
                     1:10-cv-03183-CCB

_____

NOTICE OF JUDGMENT

_____

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate. If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition. Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. (www.supremecourtus.gov)

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers are sent to counsel appointed or assigned by the court in a separate transmission at the time judgment is entered. CJA 30 vouchers are sent to counsel in capital cases. CJA 20 vouchers are sent to counsel in criminal, post-judgment, habeas, and § 2255 cases. Assigned counsel vouchers are sent to counsel in civil, civil rights, and agency cases. Vouchers should be completed and returned within 60 days of the later of entry of judgment, denial of a petition for rehearing, or the grant or denial of a petition for writ of certiorari. If counsel appointed or assigned by the court did not receive a voucher, forms and instructions are available from the court's web site, www.ca4.uscourts.gov, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a Bill of Costs within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition to identify the cases to which the petition applies and to avoid companion cases proceeding to mandate during the pendency of a petition for rehearing in the lead case. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 15 pages. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE:** In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).